OPINION OF THE COURT
Bernard F. McCaffrey, J.
In order to give meaning to the intent and spirit of the Equitable Distribution Law it is necessary, at times, for the court to utilize judicial innovation. The underlying facts and the unique set of circumstances in this matrimonial matter cry out to the court for such relief.
On May 29,1981, the defendant husband, without cause or provocation, attacked the plaintiff wife with a knife and inflicted numerous serious wounds upon her, requiring extensive hospitalization, surgery and therapy. After leaving her for dead, the defendant fled from the marital premises and was not apprehended until some five months later. The defendant was subsequently tried and convicted of attempted murder, and is now serving a 8V3- to 25-year prison term.
*1002 The court notes that this plaintiff wife, solely through the acts of the defendant, has been left in a destitute financial situation. It would be inconceivable to merely make a meaningless, uncollectable award of maintenance and child support, leaving her relegated to never ending legal expenses in vain frustration seeking these support payments, while the debts were ever increasing. Plaintiff was compelled to go on welfare to support herself and the three children.
Thus, the court has been called upon to employ judicial innovation in the application of the Equitable Distribution Law in order to do equity and justice. This is so, not only to a viable alternative to an uncollectable award of maintenance and support, but also as to the structuring of an equitable distributive award to meet these unique circumstances. In particular, is the court’s dilemma of how. to equitably apply the intent of the Equitable Distribution Law in a situation where the pension is vested, and the defendant declines to file for either a regular pension, or apply for and submit to a physical for a substantially higher disability pension. The economic crisis to the family is ever increasing in that the pension payout is not cumulative. Thus, for each pension period that the pension is not in effect, that portion of the pension proceeds is forever lost. Therefore, if there ever was a time that reason and justice should prevail, it is here. This is so even if new judicial trails must be blazed, where, as here, there are no controlling precedents to guide the court.
At the outset the court finds that fault itself should not be considered as a factor in either the granting or denying of equitable distribution or a distributive award. However, this court holds that there are certain circumstances that can trigger fault as a factor. Though there is no question but that the assault on plaintiff’s life by the defendant husband was a heinous act, it is not the repugnance or violence of the act itself that is the basis for fault to be considered as a factor, rather there must be a finding of such adverse detrimental effect upon the innocent spouse. Thus, there must be a two-step finding: (1) fault, and (2) such adverse physical and/or psychological effect upon the innocent spouse so as to interfere with her ability to be, or *1003 to become self-supporting. The facts presented in this matter clearly spell out the exception to the rule. The overwhelming evidence demonstrates that the effect of the marital fault had a drastic physical and psychological effect upon the wife’s ability to be, or to become self-supporting. Thus, there was a convincing showing of the two-step finding.
DIVORCE
The plaintiff wife of this 18-year marriage seeks a divorce against her husband, the defendant. Plaintiff and defendant were married on March 28,1965. The defendant is 42 years of age; he previously was a Suffolk County police officer, and is now committed to a State correctional facility for the attempted homicide of his wife, the plaintiff. The plaintiff is also 42 years of age, and presently is unemployed. The defendant himself refused to return to Suffolk County for the trial, contending that he was afraid for his life in Suffolk County. The defendant was represented at the trial by counsel and a guardian ad litem, William Harrison, Esq., appointed by order of the court dated May, 1983 (Geiler, J.).
There are three children of the marriage, Jeffrey born October 13, 1965; John born January 10, 1969; and Lynn born June 4, 1976. Jeffrey, during the school year resides at New Paltz where he is attending college.
The plaintiff testified at the trial, substantiating the following allegations of her complaint:
(a) On or about May 29, 1981, defendant, without cause or provocation therefor, attacked plaintiff with a knife and inflicted multiple stab wounds upon the body of the plaintiff;
(b) In August, 1979 defendant struck the plaintiff;
(c) In the spring of 1979 defendant attempted to choke the plaintiff;
(d) During the last several years of the marriage defendant engaged in irrational, paranoid behavior causing plaintiff to suffer severe emotional anguish, being hypercritical of the plaintiff.
*1004 To the extent that defendant’s history of mental illness and irrational behavior was introduced at the trial, including the written report of a psychiatrist who examined defendant prior to his sentencing on the attempted murder conviction and found defendant to have a serious mental illness, the court finds that such condition does not excuse the defendant from his acts of cruel and inhuman treatment.
The court finds in favor of the plaintiff in her cause of action for a divorce on the grounds of cruel and inhuman treatment of the plaintiff by the defendant. Clearly, the defendant’s conduct toward plaintiff constituted cruelty as defined in subdivision (1) of section 170 of the Domestic Relations Law, as “[rendering] it unsafe [and] improper” for the plaintiff to continue to live with the defendant. The function, here, for the court is not to determine intent but, rather, the result of the conduct of defendant and whether or not it was such as to render it “unsafe or improper for the plaintiff to cohabit with the defendant.” (Domestic Relations Law, § 170, subd [1].) This issue appears to have been raised and considered in the Court of Appeals in Pajak v Pajak (56 NY2d 394), which indicated that subdivision (1) of section 170 of the Domestic Relations Law “focuses exclusively upon the effect of the conduct complained of and makes no mention of its cause” (p 397). Under the circumstances, plaintiff is entitled to a divorce against defendant. The court finds that plaintiff shall have custody of the infant children of the marriage.
Having established that plaintiff is entitled to a divorce, the court now turns to the issues of maintenance and support, equitable distribution, and the other ancillary aspects of the case.
MAINTENANCE AND SUPPORT
Plaintiff testified to a need for income in a sum of approximately $2,000 per month for herself and her three children. Of course, the 10 factors under subdivisions 5 and 6 of part B of section 236 of the Domestic Relations Law, and the five factors under subdivision 7 of part B of section 236 of the Domestic Relations Law must be considered in the light of the fact that the defendant is incarcerated in prison and is mentally ill.
*1005 The plaintiff, before the attack, had been a secretary and a bookkeeper, capable of self-support and contribution to the support of the children. As a result of the defendant’s acts, she can no longer, despite efforts, work and she will not be able to work for the foreseeable future. She can’t type and, though she tried to return to the job market, she was unable to hold onto a bank job where she had been employed. The permanent nerve damage, particularly to her hand, and the pain and difficulty she experiences from physical exertion makes this particularly so. The plaintiff is now back on public assistance.
The court believes that the plaintiff is entitled to maintenance and child support in the sum of $350 per week. The court would allocate the $350 as $125 for maintenance, and $225 as child support. However, inasmuch as defendant, because of his incarceration, is incapable of making weekly payments to plaintiff, the court finds that at the very outset the circumstances call out for an equitable solution.
In setting an award of maintenance and support, the court is well aware of the fact that it might very well be uncollectable, particularly during the period that the defendant remains incarcerated. However, the court makes this award of maintenance support lest the plaintiff and the children, in effect, should be left with no means of support in the event that any of the equitable distribution or distributive award provisions are unable to be realized for any reason.
To the extent that the plaintiff is able to collect defendant’s pension benefits as provided for hereinafter, said benefits shall be deemed to be a credit towards the maintenance and child support established hereinabove.
Payment of maintenance and child support shall be deemed payable beginning with the date of signing of the judgment to be submitted herein.
PENSION
A major asset in this case which requires unique handling is the defendant’s right to a pension from his employment as a police officer in Suffolk County. The pension in question is vested. However, in this case, the defendant has refused to apply for same, as he does not need said funds *1006 due to his incarceration and does not wish the plaintiff to share in said proceeds. The fact that defendant, by his attitude, is denying his children the benefit of said proceeds does not dissuade him from the position he has taken in regard to his pension. The situation is made more complicated in that defendant may very well qualify for a disability pension (mental illness), but will not consent to an examination to confirm this.
That vested pensions are subject to equitable distribution as marital property has been established. (Majauskas v Majauskas, 110 Misc 2d 323; Lentz v Lentz, 117 Misc 2d 78; Perri v Perri, 115 Misc 2d 478; Hebron v Hebron, 116 Misc 2d 803.)
The court notes plaintiff’s own positive efforts, including her contribution as a spouse, wage earner, parent, homemaker, and her support of the career potential of her husband. Throughout the marriage the plaintiff wife continued to give moral support to the defendant and encouraged him to seek the necessary medical help; and in all respects supported his needs and did everything she could to sustain him in his position as a Suffolk County police officer.
Because of the unique facts and circumstances surrounding this case, the court cannot apply the usual reasoning and formula contained in cases dealing with the pension problem. The court, instead, awards the plaintiff 100% of defendant’s pension, thereby affording plaintiff the full utilization of these proceeds which becomes all the more essential, in that the maintenance and child support award will probably be uncollectable during the period of defendant’s incarceration. The defendant, upon any release, may apply to the court at that time for a modification of this apportionment, without prejudice to the plaintiff to seek further modification of the award of maintenance and support.
If it were not the ever deteriorating fiscal crises confronting the plaintiff and the children, the court would follow the more traditional route of making the award of the pension proceeds and leave the plaintiff to seek her own means of legal avenues to actually obtain the benefits of the pension proceeds.
*1007 However, in this instance, it would be unconscionable to leave the plaintiff in such a dilemma. Such further legal procedures would be protracted and expensive, and would completely thwart the benefit of such award.
Thus, this court further holds that the trustees of the police pension fund are directed to accept and process any application for pension benefits filed by the plaintiff on behalf of the defendant. Further, in the event that a disability pension is applied for, then the defendant is directed to submit to any required physical and/or examinations which may be required by the pension board. In the event that the defendant shall refuse to submit to said physical and/or examinations, then the pension board is directed to consider, as an acceptable alternative, such existing medical reports and records of the defendant.
Further, the guardian ad litem, William Harrison, Esq., who is specifically commended by the court for his services in this matter, is continued for this purpose, and he is directed to take any and all necessary procedures, in the event the defendant declines to do so, to execute any and all documents on behalf of the defendant that may be required by the pension board in this respect.
MARITAL PREMISES
The marital residence was purchased on April 23, 1973, and is known as 81 Joseph Street, Sayville, New York, held in both parties’ names as tenants by the entirety, and is said to have a value of between $45,000 and $50,000, and has an outstanding mortgage in the approximate amount of $18,000. The defendant has, of course, ceased making payments since his apprehension after his attack on the plaintiff in 1981. At present there is a substantial lien by social welfare as a result of its contributions to the upkeep of the premises in the amount of $9,468.67, as of September 3, 1982; and, as previously noted, the plaintiff is back on welfare.
Equitable distribution of the jointly held marital residence has been found proper under the analogous statutes of our sister State (see Sanders v Sanders, 118 NJ Super 327; Canova v Canova, 146 NJ Super 58; Gemignani v Gemignani, 146 NJ Super 278) and in New York, as well. *1008 (Kobylack v Kobylack, 110 Misc 2d 402; Muller v Muller, 116 Misc 2d 660; Pepperman v Pepperman, Supreme Ct, Nassau County, index No. 10830/81.)
Often, as here, one of the principal assets subject to equitable distribution is the marital abode. The court awards to the plaintiff sole and exclusive use, and 100% title to the marital abode. It should be noted that had the defendant succeeded in his attempt to kill the plaintiff, he would not thereafter have been entitled to the property (14 NY Jur, Decedents’ Estates, § 82). Thus, to allow the defendant any interest in the marital premises would be tantamount to permitting the defendant to obtain by indirect that which he failed to obtain by direct attack upon the life of the plaintiff. (D’Arc v D’Arc, 164 NJ Super 226.)
Furthermore, in making this award the court has considered the overwhelming evidence that the defendant has dissipated family assets of at least $27,000. Between September, 1980 and May, 1981, the defendant withdrew the sum of $26,833.93 of marital property from various bank accounts, in addition to other withdrawals, and none of this money has ever been accounted for.
It is clear that the plaintiff wife and the children have a need to the marital premises, and the defendant does not. The court finds that, if the need arises, the plaintiff should have the right and authority to sell the marital premises and retain all the equity from said sale over the mortgage, the social welfare lien and any other liens. The defendant has no need for such funds, and whatever rights he may have had in the marital premises he forfeited in his attack upon the plaintiff, which has affected her ability to move back into the job market at the level previously attained.
In adjusting the equities here, the court effectuates an equitable distribution by divesting the defendant of all right, title and interest, claim or claims in and to said premises known as 81 Joseph Street, Sayville, New York, and vests title in the fee simple to the plaintiff, free and clear of all claims of defendant. (See Sanders v Sanders, 118 NJ Super 327, supra.) The plaintiff is also entitled to exclusive ownership of the furnishings in the marital residence.
*1009 AMITYVILLE PROPERTY
The improved real property known as 112 Cedar Street, Amityville, New York, was acquired by defendant by deed from his mother in 1971. The defendant apparently conveyed, without consideration, title of said premises to his cousin, Todd Anderson, after the plaintiff commenced her action for divorce. It also appears that there has been little or no social contact between the defendant and the said Todd Anderson any time during this marriage.
The record herein reflects that the plaintiff had commenced a separate action to void the transfer of the Amity-ville property of the defendant to Anderson as one without consideration and as an attempt to keep assets from the plaintiff. Anderson never appeared in this action. The defendant’s attorney, in representing the interest of defendant in said action, had that action joined with this matrimonial action.
The record is clear that it is the defendant, and not the plaintiff, who maintained and had physical possession of the records affecting both the marital premises and the Amityville premises and, thus, were not available to the plaintiff throughout this trial. The evidence presented by plaintiff on the trial, coupled with Anderson’s default in appearance, is sufficient to set aside the transfer of said property by defendant to Anderson. The court further finds that the transfer to Anderson was done solely to deprive the plaintiff from obtaining the benefits of the Amityville premises.
It is likewise clear from the record that with the original transfer of the Amityville property to the defendant in 1971, said property constitutes separate, rather than marital property. Section 236 (part B, subd 1, par d) of the Domestic Relations Law states as follows:
“d. The term separate property shall mean:
“(1) property acquired before marriage or property acquired by bequest, devise, or descent, or gift from a party other than the spouse”.
However, section 236 (part B, subd 1, par d, cl [3]) of the Domestic Relations Law specifically excludes from the definition of “separate property” that portion of such property which constitutes any “increase in value * * * to the *1010 extent that such appreciation is due in part to the contributions or efforts of the other spouse”. Such is the case in this instance, where the evidence is clear that plaintiff did make substantial efforts and contributions since the acquisition by defendant of the Amityville property. Thus, for a period of about 10 years or so before the commencement of this action for divorce, the defendant was in and out of hospitals for treatment. During portions of this time, the plaintiff even drove the defendant to his job on a daily basis, while at the same time going to work herself and caring for the house and children. It is also clear that there has been a withdrawal of, or dissipation of joint assets by defendant (a withdrawal of approximately $27,000 was claimed by plaintiff; defendant admitted the dissipation of $15,000) and a commingling of joint assets or funds to sustain, in part, the maintenance of the Amityville property.
Under all the circumstances, the plaintiff has shown a contribution that would certainly qualify, here, for an interest in the appreciation in value of the Amityville property. Thus, in this case, it would appear that the equitable solution to treatment of the Amityville property would be to award the plaintiff a 25% share in the Amity-ville property to both illustrate her contribution to the appreciation in value, and by way of a distributive award in view of the peculiar circumstances of this case.
What with the admitted dissipation of joint assets by the defendant, the plaintiff would be entitled, at the least, to a share of the income derived from the leasing of the Amity-ville property. However, the income is nominal in relation to the existing mortgage expenses on the property, and there is little or no profit resulting from the rental. The court finds that the most equitable solution, here, would be to direct a sale of the Amityville property with the parties sharing the net proceeds of the sale (after the payment of the mortgage, brokers and counsel fees, etc.); 75% to the defendant and 25% to the plaintiff. This would eliminate the need to appoint a conservator to manage the property during defendant’s confinement, while at the same time creating a fund for income to defendant if he is ever released and/or a fund for claims by the plaintiff for sup *1011 port if the other means of support directed herein do not materialize. It should be noted that this disposition of the Amityville property, in part, embraces the intentions expressed, at times, by the defendant and his attorney. In his more lucid moments, the defendant has indicated a desire that the Amityville property benefit the welfare of his children. The defendant’s attorney, although maintaining that the property is separate and not marital, has had no objection to the revenue from the rental of the property enure to the benefit of the family during defendant’s confinement. The directed sale of the Amityville property would eliminate any possibility of the property falling into the hands of creditors, or into disrepair as a result of the defendant’s confinement, and lack of ready access to the premises by the plaintiff who lives some distance from the Amityville property.
In the event the defendant refuses to cooperate with the sale of the Amityville property, to effectuate same, the guardian ad litem is directed to execute a deed on behalf of the defendant.
OTHER LIQUID ASSETS
The court, from an equitable standpoint, awards to the plaintiff the bank accounts totaling approximately $9,000, the two automobiles and the trailer, and the contribution of defendant to the New York State Policemen’s and Firemen’s Retirement System, which as of April 1,1983, was in the sum of $3,274.36 with interest.
The silver coins with a face amount of $375 and a trading value of approximately $3,000 are determined to be separate property of the defendant.
The court makes no determination with respect to the plaintiff’s request for an order waiving and refunding fees by the Sheriff in connection with the habeas corpus proceeding commenced to bring the defendant to Suffolk County, as such proceeding would have to, upon proper notice, name the Sheriff and County of Suffolk as parties.
COUNSEL FEES
The attorneys for the plaintiff and the guardian ad litem rendered exemplary services in this very difficult case. However, the source of funds from which to award fees is *1012 limited to the extent referred to hereinabove. Although well deserving of a fee in this matter, the guardian ad litem has very generously waived not only his fee, but incidental costs incurred in connection with his services.
The original attorneys for plaintiff are hereby awarded the sum of $475 for their fee, along with $50 for disbursements. The present attorneys for plaintiff are hereby awarded a fee of $3,500, and disbursements of $760.55. Said fees shall be payable from back wages owed defendant in the net amount of approximately $4,873.
Although the guardian ad litem has waived his fee for services to date, in view of his retention herein for purposes of pension application and the sale of the Amityville property on behalf of defendant, the guardian ad litem may make application to the court for these postjudgment services when performed. Said fee shall be paid from the gross proceeds of the sale of said property.
The injunctions of the court dated December 9, 1981 (Gowan, J.) and May 20,1982 (McCarthy, J.) are vacated to enable the payment of the fees set forth herein. Likewise, the same injunctions involving the bank accounts referred to in exhibit 9 and awarded to the plaintiff in this decision are vacated so as to enable the release of funds to the plaintiff as set forth hereinabove.
Any motions not otherwise specifically decided herein are deemed denied.
Although the factors which the court is required to consider pursuant to section 236 of the Domestic Relations Law are contained throughout this decision, the court, by addendum hereto, specifically recaps those factors in their chronological order.