OPINION OF THE COURT
Kristin Booth Glen, J.
In this contested divorce action, the plaintiff M.V.R. (the wife) sued her husband, alleging cruel and inhuman treatment as a first cause of action, and abandonment as a second. Defendant T.M.R. (the husband) answered, denying some allegations, admitting others, and requesting that the court issue a judgment of separation. When the case was sent out for trial, the husband moved for summary judgment on the wife’s abandonment claim. Additionally, he moved to preclude any evidence going to the cruelty claim on the financial issues, particularly that of equitable distribution, which remained for decision by the court. The wife, opposing both motions, sought to withdraw her cause of action for abandonment so that only the issue of cruelty would remain to be tried.
This somewhat tangled procedural web obscures what is in fact a critical legal issue whose resolution is of great importance to the construction and operation of the 1980 *675 equitable distribution statute. The issue, simply stated, is whether, or under what circumstances marital fault may be considered as a factor in determining equitable distribution. For the reasons discussed below, I hold as a matter of law that fault may not be considered under section 236 (part B, subd 5, par d, cl [10]) of the Domestic Relations Law. Accordingly, the husband’s motions are granted[2] and the wife’s denied.[3]
BACKGROUND
In 1980 the provisions of the Domestic Relations Law dealing with the economic aspects of marital dissolution were subjected to a sweeping reform. Courts, previously limited to awarding permanent alimony[4] and generally bound by the title of property held by spouses[5] were given broad power in awarding “maintenance” and dividing property. The court’s power was not, however, unlimited, as the Legislature listed factors which could or should be considered in making the determinations required by the new law. It is the meaning and limitation of the enumerated factors in section 236 (part B, subd 5, par d) of the Domestic Relations Law which are of concern here. The issue presented has been the subject of several lower court decisions which have reached varying results.[6] None of these decisions, however, provides an adequate analysis of *676 the issues which the appellate courts will have to consider in definitively interpreting the statute, for it is clear that the meaning of the statute must ultimately be created by the courts — in examining the policies underlying its enactment and the views and experience of sister States.
This reliance on judicial construction is neither surprising nor unintentional; the history of the new statute shows it to have been the product of diverse and often antagonistic political forces. Although our statute was generally modeled on the Uniform Marriage & Divorce Act (UMDA) it differs from that model in its omission of the provision which specifically prohibits any reference to marital fault in the division of marital property. The first draft of our statute tracked the language of the UMDA, but that language was dropped in the course of compromises with legislators who wanted fault expressly included as a factor (see Foster, Commentary on Equitable Distribution, 26 NY Law School L Rev 1, 49 [“Foster, Commentary”]). In effect, by neither expressly including nor excluding marital fault, but by including the potentially catchall “any other factor which the court shall expressly find to be just and proper” (Domestic Relations Law, § 236, part B, subd 5, par d, cl [10]), the legislators left the final decision to the courts.
SISTER STATE DECISIONS
Since the UMDA has been the basis of reform in the marital dissolution laws of many States, there is already a large body of case law concerning the factors to be weighed in deciding what distribution of property is “equitable”. This body of law must, however, be approached with some care, since it includes a number of variations on the UMDA which make it more or less analogous to the New York statute. For this reason, citations to decisions of other States may be misleading, depending on the specific provisions of their statutes, or the judicially created doctrines which they apply.
Although the UMDA itself expressly prohibits consideration of marital fault, those States which have enacted modified versions have followed three major models. In the *677 first, courts are given various factors to consider, specifically including the causes for dissolution of the marriage (e.g., Conn Gen Stats Ann, § 46b-81), or the conduct of the parties during the marriage (e.g., Mo Stats Ann, § 452.330 [1]; see Conrad v Bowers, 533 SW2d 614, 619-620 [Mo]). In the second, courts are given a list of factors, but marital fault is not included (e.g., Boyd v Boyd, 421 A2d 1356 [Me]). Finally, there are statutes which give the court no listed factors to consider but which also do not expressly exclude consideration of marital fault (e.g., NJ Stats Ann, § 2A:34-23; Mahne v Mahne, 147 NJ Super 326).
Clearly, cases decided in States which have adopted the first variation are entirely inapplicable, while those from sister States with or without factors, but without specific inclusion of marital fault, give greater guidance. In the second category, Boyd v Boyd (supra), is particularly helpful. There the Maine Supreme Court construed its new equitable distribution statute which was modeled on the UMDA. Citing an earlier Iowa case, Matter of Williams (199 NW2d 339 [Iowa]), the court held that the Legislature’s failure to specifically include marital misconduct in the list of factors it provided meant that such misconduct could not be considered.
Interpretation of the third model, where no factors are provided and the court is given the broadest possible discretion has been best provided in a series of New Jersey cases, which have been frequently cited in construing the New York statute. The leading case there Chalmers v Chalmers (65 NJ 186), unequivocally held that marital fault may not be considered on equitable distribution. The bases for this thoughtful and frequently cited opinion will be discussed below. Here, however, the point is that the decisions of sister States, whose statutes vary from the UMDA as much as they do from our act are helpful, but not dispositive of the question presented. Instead, the courts must consider the policies and goals of the legislation, and in particular of the concept of equitable distribution; here the discussions contained in the decisions of other States may prove beneficial, as does the limited legislative history of the new statute.
*678 Three major policy considerations emerge from this examination. They are (1) the notion of marriage as an economic partnership, (2) the difficulty of determining fault, and (3) the potential to introduce evidence and weigh considerations which have no place in the law and which may result in unfair and/or unlawful discrimination. These policies will be discussed separately, and seriatim.
(1) MARRIAGE AS PARTNERSHIP
In his memorandum to the Legislature upon signing the new statute, Governor Carey specifically referred to the marriage relationship as an “economic partnership”. (McKinney’s Sessions Laws of NY, 1980, p 863.) The Assembly memorandum, while rejecting equal, i.e., 50-50 distribution, echoed the same basic understanding of an economic partnership in which the contributions of each spouse partner should generally be considered equal.[7] As in commercial partnership law, from which this model is drawn, fault is irrelevant in the distribution of partnership assets upon dissolution of the partnership. (See Scheinkman, Practice Commentary, McKinney’s Cons Laws of NY, Book 14, 1981-1982 Pocket Part, Domestic Relations Law, § 236, p 33.) In reviewing this consideration, the New Jersey Supreme Court wrote persuasively, “the statutory provision for equitable distribution of property is merely the recognition that each spouse contributes something to the establishment of the marital estate even though one or the other may actually acquire the particular property. Therefore, when the parties become divorced, each spouse should receive his or her fair share of what has been accumulated during the marriage. The concept of fault is not relevant to such distribution since all that is being effected is the allocation to each party of what really *679 belongs to him or her”. (Chalmers v Chalmers, supra, at p 194.)
This notion of marriage as a partnership, and the incompatibility of marital fault with that underlying notion seems, and indeed is dispositive in determining that fault may not be considered in property distribution, and thus that evidence of fault is entirely inadmissible in that determination (see, e.g., Matter of Boyd, 200 NW2d 845, 853 [Iowa]). Two other considerations which involve the difficulties for courts and potential unfairness to litigants fully support this conclusion.
(2) DIFFICULTY IN DETERMINING MARITAL FAULT
The wife here has asked that the court consider behavior by the husband which she claims is responsible for the dissolution of the marriage. To make such a determination places the court in a difficult, if not impossible position[8] which is entirely distinguishable from its role in granting or denying a decree of divorce. In the latter case the court or, in some instances a jury,[9] must simply find certain acts specified by the Legislature, i.e., that the defendant abandoned the plaintiff for a period of a year, or that the defendant committed an act of adultery. Dissolution follows directly from those factual findings.
In considering marital fault in equitable distribution, however, the court may or may not make specific findings, but would be required, in God-like fashion, to lay blame. This in turn would require an extensive inquiry into the most intimate areas of a couple’s life, while promising no certainty that such blame could even be found — or assigned — to one partner or the other. As the New Jersey Supreme Court wrote in Chalmers (supra, at p 193) “fault may be merely a manifestation of a sick marriage. The spouse who by his or her actions gives cause or grounds for *680 divorce may not be responsible for the breakdown of the marriage and may merely be reacting to a situation which is not of his or her making. Marriage is such an intricate relationship that often it is difficult, if not impossible, to ascertain upon whom the real responsibility for the marital breakup rests”. For this reason, in posing the question whether marital fault should be one of the criteria or circumstances taken into account, the court wrote (p 193) that the answer “must be in the negative, even though the statute speaks of 'equitable distribution.’ Indeed, we are satisfied that the concept of ‘equitable distribution’ requires that fault be excluded as a consideration” (emphasis added).
(3) POTENTIAL FOR DISCRIMINATION AND IMPERMISSIBLE CONSIDERATIONS
Permitting consideration of marital fault not only presents the court with an entirely impossible task, but opens the door to evidence whose very purpose[10] may be to prejudice Judges in impermissible ways. This in turn may lead to unlawful, if unintended, discrimination against members of already historically disadvantaged groups including women, the poor, and, as the instant case demonstrates, homosexuals.
There is no question that gay people have historically been oppressed by the laws and the court system, and that antihomosexual views, conscious or otherwise, have dominated the legal arena. For example, homosexuality, although not itself a ground for divorce,* [11] has frequently been used under the rubric of “cruel and inhuman treatment”. (See Rivera, Our Straight-Laced Judges: The Legal Position of Homosexual Persons in the United States, 30 *681 Hastings LJ 799, 883 [“Rivera”].) Given the pervasiveness of cultural bias against gays,[12] Judges themselves are frequently not free from antihomosexual preferences (e.g., Warner, Homophobia, “Manifest Homosexuals” & Political Activity: A New Approach to Gay Rights & the “Issue” of Homosexuality, 11 Golden Gate L Rev 635, 676 [“Warner”]) and there is no way to predict how the use of a spouse’s sexual preference in the context of “marital fault” may unfairly affect his or her right to equitable distribution (see ns 9, 10).
The Court of Appeals has recently spoken in eloquent terms of the right of privacy of all adult individuals to express their sexual preference and to engage in private sexual activity free from governmental interference. (People v Onofre, 51 NY2d 476.) The law, it held, should not be the determiner of private morality. The Onofre decision and lower court decisions which have applied it in other contexts (e.g., Matter of Adult Anonymous, NYLJ, Feb. 3, 1981, p 12, col 6)[13] signal a welcome, though long overdue acknowledgment that the institutionalized oppression of, and discrimination against, gay people have no place in our legal system.
The official pronouncements of the Court of Appeals clearly lead the way, but we must be cautious lest prejudices which die slowly find their way into the courts in other guises. If fault is a consideration in equitable distribution, a spouse like the defendant in this case might well be punished, albeit indirectly, for his homosexuality — something Onofre (supra) suggests may not be tolerated. As such, this case provides a graphic example of the way in which the inclusion of marital fault in the New York statute would open the doors of our courts to unwarranted and legally unacceptable consequences.
*682 Permitting consideration of fault, even when a statement of that fault must be included,[14] does not, unfortunately, guarantee that it will always be used evenhandedly. As already discussed, the “fault” of homosexuality may be considered, because of society’s and Judges’ prejudices, more severe, and thus weigh more in equitable distribution than verbal abuse —: a ground for divorce under the same statutory provision invoked by the wife here. Other examples of the possible misuse of fault which may result in impermissible discrimination are equally compelling. One of the most obvious of these is the strong possibility of discrimination by gender. Although the Legislature has spoken directly to the necessity of gender neutrality in the award of maintenance and in equitable distribution,[15] we cannot ignore the fact that a double standard still exists.
Proponents of a statutory presumption of equal, rather than “equitable” distribution, argued that experience has shown women consistently receiving a lesser share than men where there is no requirement of a 50-50 division. (Weitzman, The Economics of Divorce: Social & Economic Consequences of Property, Alimony & Child Support Awards, 28-UCLA L Rev 1181, 1199, n 60.) In large part this may be due to the use, conscious or otherwise, of a double standard in assessing fault. A wife, for example, who commits adultery is far more likely to be viewed unfavorably and as the precipitating cause of marital breakdown than is a husband who engages in the same behavior. The use of the gender neutral factor of fault still poses a substantial danger of gender discriminatory division of marital assets.
There is one final way, suggested by a New York decision holding fault a permissible factor, in which invidious discrimination may occur. In Kobylack v Kobylack (110 Misc 2d 402, 408, supra), the court held that “As a general *683 rule, fault should not be used as a punishment but only as a consideration to tilt the balance where there are insufficient assets to make the parties economically ‘whole’”. Under this rationale, wealthy and propertied spouses may engage in marital misconduct with impunity, while those who are less fortunate will be financially punished. This surely was not intended by the Legislature (see Scheinkman, Practice Commentary, McKinney’s Cons Laws of NY, Book 14, 1981-1982 Pocket Part, Domestic Relations Law, § 236, pp 42-43), nor is it clear that a distinction based on wealth or poverty would be constitutionally permissible in this context.
CONCLUSION
As the Chalmers court wrote, equitable distribution is premised on a concept of partnership. The partner in a business enterprise who commits adultery or who drinks excessively, or is homosexual — or a heterosexual — still receives his or her share on dissolution of the partnership.[16] So should the partner in a marriage. It is the dissolution of the marriage itself which acts as relief for the “innocent” partner. Any additional consideration of fault goes beyond the reasonable interpretation of the statute’s language, would cause lengthy, burdensome, excessive and ultimately inconclusive litigation, and might result in impermissible punishment for protected private activity, or result in invidious gender discrimination of a sort the Legislature specifically excluded. Accordingly, fault may not be considered under section 236 (part B, subd 5, par d, cl [10]) of the Domestic Relations Law, and evidence of fault may not be introduced in the determination of equitable distribution.

. Summary judgment may be granted to a nonmoving party if the facts warrant it. (CPLR 3212, subd [bj.) Although the wife might sustain her burden on both causes of action, she would ultimately be entitled to no more than a judgment of divorce and would thus have gained no further rights or benefits than she would pursuant to summary judgment on abandonment (Hickox v Hickox, 72 AD2d 688, 689).

. A cause of action may only be withdrawn at trial by leave of the court (CPLR 3217, subd [b]). Here, since trial on the cruelty claim would result in unnecessary use of the court’s — as well as the parties’ — time and resources, since no different relief could be granted than that upon the uncontested abandonment claim, and since the cruelty evidence would not be admissible upon the only remaining issue, equitable distribution, the wife will not be permitted to withdraw her uncontested cause of action for abandonment.

. The courts were so limited by the statute’s single concept of alimony as permanent support that an award of rehabilitative alimony, common in other jurisdictions, was seen as beyond their jurisdiction (see Morgan v Morgan, 81 Misc 2d 616, mod 52 AD2d 804, app dsmd 40 NY2d 843).

. Courts were entirely bound by title, with one possible ameliorating power, that of the imposition of a “constructive trust”. The legal prerequisites for funding a constructive trust were sufficiently limited as to make this a tool of limited usefulness.

. See, e.g., Reardon v Reardon, NYLJ, July 23, 1981, p 12, col 1 (fault apparently relevant); Nehorayoff v Nehorayoff, 108 Misc 2d 311 (husband at fault for divorce, apparently not considered an equitable distribution); Giannola v Giannola, 109 Misc 2d 985 (fault considered); Kobylack v Kobylack, 110 Misc 2d 402 (fault may be considered under certain circumstances).

. Assembly memorandum in support of bill, Assembly 6200 A, Senate 6174 A (1980) (reprinted as Appendix A to Foster, Commentary, p 93) provides “The basic premise for the marital property and alimony (now maintenance) reforms of this legislation (§ 236) is that modern marriage should be viewed as a partnership of coequals. Upon the dissolution of a marriage there should be an equitable distribution of all family assets accumulated during the marriage and maintenance should rest on the economic basis of reasonable needs and the ability to pay. From this point of view, the contributions of each partner to the marriage should ordinarily be regarded as equal, and there should be an equal division of family assets, unless such a division would be inequitable under the circumstances of the particular case.”

. The instant case provides a perfect example of this problem. The wife claims that it was the husband’s homosexuality -which “caused” the marriage to fail. Determination of whether this was the sole cause, or indeed any cause might entail an examination of the couple’s sexual life, the wife’s own sexuality, as well as all the other circumstances of their lives together over a 20-year period. Surely courts cannot —• and should not — engage in such inquiry.

. A jury trial may be had only of “the issues of the grounds for granting the divorce” (Domestic Relations Law, § 173).

. In considering the practical effects of a contrary determination, Professor Foster suggests “Undoubtedly, trial lawyers will highlight marital fault in order to gain advantage, and the success of such a strategy will depend largely upon the receptiveness of the particular judge”. (Foster, Commentary, p 50.)

. An extramarital homosexual act, like a heterosexual one, may, of course, be grounds for divorce, based on adultery. (Domestic Relations Law, § 170, subd [4].) This however, is quite different from “punishing” the status of homosexuality with dissolution, while obviously not imposing a similar sanction on heterosexuality (cf. Robinson v California, 370 US 660 [punishment for status of addiction impermissible]). No suggestion that homosexuality is an illness should, however, be drawn from this citation, as homosexuality has specifically been removed from the American Psychological Association’s list of mental disorders (New York Times, April 19, 1974, § 1, p 12, col 4).

. As Warner points out (p 697, n 255) “To a great, if undetermined, extent, anti-homosexual attitudes may persist because of the law’s reflection of moral values, scientific knowledge, and social theories which, [regardless of] their significance in the past, no longer have moral, factual or social validity”. For a full discussion of this subject, see Weeks, Sex, Politics & Society: The Regulation of Sexuality Since 1800.

. Holding that the adoption of an adult homosexual by another adult homosexual does not violate public policy after Onofre (and cf. 420 East 80th Co. v Chin, NYLJ, Aug. 12, 1982, p 4, col 1 [App Term, 1st Dept] [homosexual cohabitation where only one partner is a party to the lease does not constitute a violation of a “substantial obligation of the tenancy”]).

. Presumably the portion of the statute which requires the Judge to list the factors found and relied upon, section 236 (part B, subd 5, par g) of the Domestic Relations Law, is intended to avoid unconscious-prejudice and/or to open it to appellate scrutiny. (See Foster, Commentary, pp 50-51.)

. See Assembly memorandum (Foster, Commentary, Appendix A) which provides “Purpose of Bill: The bill has basically two purposes: First: To eliminate unconstitutional sex distinctions”.

. As in commercial partnership law, however, the dissipation of assets by one partner could be considered in dividing assets, as one court has already held. (See Whelan v Whelan, NYLJ, Sept. 24,1981, p 12, col 5.) Note, however, that it is the fact of dissipation, not the cause of it (“fault”) which may legitimately be included as “any other factor which the court shall expressly find just and proper”.