LINDA BLICKSTEIN, Respondent, v ARNOLD BLICKSTEIN, Appellant.

Second Department, February 14, 1984

### APPEARANCES OF COUNSEL

*Rothfeld, Ostrow & Lawrence* (*Amy S. Nord* of counsel), for appellant.

*Hall, Dickler, Lawler, Kent & Howley* (*Paul Whitby* of counsel), for respondent.

### OPINION OF THE COURT

BROWN, J.

We conclude on this appeal that marital fault is not generally a relevant consideration in the equitable distribution of marital property of divorcing spouses and, accordingly, remit this matrimonial litigation to Special Term for a new determination in accordance with this opinion.

The plaintiff wife commenced the instant action for divorce on the ground of cruel and inhuman treatment, seeking an equitable distribution of the marital property, but not an award of maintenance. The complaint was subsequently amended to include a cause of action for divorce based upon abandonment and the case proceeded to trial on this ground only. The cause of action for cruel and inhuman treatment was withdrawn. At the commencement of the trial, the parties stipulated that the issue of abandonment would be uncontested, but the defendant husband expressly reserved his right to contest the financial aspects of the action. The trial proceeded on this basis, with the plaintiff testifying that the defendant had left the marital residence more than one year previously and had not returned. Although the defendant testified in his own behalf, he neither contradicted the plaintiff's testimony in this regard nor attempted to justify his conduct. There was no further evidence introduced concerning the fault of either party.

On the basis of the plaintiff's testimony, Special Term found that she had established her cause of action for abandonment and granted her a judgment of divorce pursuant to subdivision (2) of section 170 of the Domestic Relations Law. Special Term also awarded plaintiff custody of the infant children of the marriage. With regard to the distribution of the marital property, Special Term noted that the only property not theretofore distributed between the parties consisted of the marital residence, certain items of personal property and some shares of stock valued at approximately $250.

Recognizing its obligation to set forth the reasons for its determination in the distribution of the marital property (Domestic Relations Law, § 236, part B, subd 5, par g), Special Term discussed each of the statutory factors to be considered (Domestic Relations Law, § 236, part B, subd 5, par d). The court found that although both parties were employed at the time of the marriage, the plaintiff had stopped working to raise their two children; that the parties had an equity of $77,000 in the marital residence, which was purchased with the assistance of the parents of both parties, and its contents; and that the defendant, who

was employed as a garment cutter in Florida and whose earnings were somewhat indefinite, had for some time been receiving monthly gifts of $400 from an aunt. The court found further that the parties had been married for approximately 13 years, were both in their midthirties and were in good health. The court recognized the need of the plaintiff, as custodial parent, to occupy or own the marital residence and noted that there was little prospect that she would advance beyond the secretarial position then held by her in which she was earning a net weekly salary of $186. It pointed out, however, that plaintiff had not requested maintenance and thus stated that no such award was being made. Finally, the court considered the tenth statutory factor (Domestic Relations Law, § 236, part B, subd 5, par d, cl [10]) and, on the basis of the factual finding of abandonment, held the fault of the defendant to be a relevant factor in the distribution of the property.

Although Special Term stated that the distribution was the result of a balancing of the 10 factors, it dwelt extensively on the role of fault and found that the abandonment by the defendant was the proximate cause of the dissolution of the marriage and of the detrimental economic consequences flowing therefrom. Special Term reasoned that where the dissolution of the marriage is precipitated by the misconduct of one partner, the other partner should be compensated for the economic damage suffered thereby. On this basis, Special Term awarded all of the marital property, including title to the marital residence, to the plaintiff. The court stated, however, that were it not for the element of fault, its distribution of the marital property would have been 60% in favor of the plaintiff and 40% in favor of the defendant. The defendant now appeals, claiming that even if fault may be considered under certain circumstances, it should not have been considered in this case, first, because his misconduct was minor and, second, because he had stipulated that the plaintiff's claim of abandonment would be uncontested.

The Equitable Distribution Law (Domestic Relations Law, § 236, part B, as added by L 1980, ch 281), requires the court to "determine the respective rights of the parties in their separate or marital property" and "provide for the

disposition thereof in the final judgment" (Domestic Relations Law, § 236, part B, subd 5, par a). The statute mandates that marital property "be distributed equitably between the parties, considering the circumstances of the case and of the respective parties" (Domestic Relations Law, § 236, part B, subd 5, par c), and establishes nine specific criteria for the court to consider in determining the distribution (Domestic Relations Law, § 236, part B, subd 5, par d). In addition, the statute allows the court, under factor 10, to consider "any other factor which the court shall expressly find to be just and proper" (Domestic Relations Law, § 236, part B, subd 5, par d, cl [10]). It is this tenth factor — the so-called catchall factor — with which we are concerned today.

Marital fault is not among the enumerated factors to be considered by the court, but neither is its consideration precluded by the terms of the statute, as it is with regard to child support (see Domestic Relations Law, § 236, part B, subd 7). Several commentators have noted that the tenth factor was included because the Legislature was unable to reach agreement on whether fault was to be considered under equitable distribution (see Foster, A Practical Guide to the New York Equitable Distribution Divorce Law, pp 297-298; Scheinkman, 1981 Practice Commentary, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law, C236B:13, p 160, 1983-1984 Pocket Part). Regardless of the historical reason for the Legislature's omission of any mention of the relevance of fault, however, the language of the statute is not ambiguous. It clearly states that the court may consider "*any* other factor" which is "just and proper" (Domestic Relations Law, § 236, part B, subd 5, par d, cl [10]; emphasis supplied). The question is squarely presented, therefore, as to whether marital fault is a "just and proper" consideration in determining distribution of marital property in light of the over-all purpose of the Equitable Distribution Law.

Although the issue was earlier raised before this court in *Kobylack v Kobylack* (96 AD2d 831), we did not reach it at that time since Special Term had not considered fault in making its distribution. In the case at bar, however, Special Term specifically stated that as a result of the finding

of fault on the part of the defendant husband it was altering, to a significant degree, the distribution it would otherwise have made.

The nisi prius courts which have considered the impact of marital fault on equitable distribution have been without agreement. One court held fault to be completely irrelevant to the distribution (see *M.V.R. v T.M.R.,* 115 Misc 2d 674), but the policy reasons underlying that decision were rejected by Special Term in the case at bar (*Blickstein v Blickstein,* NYLJ, Dec. 21, 1982, p 14, col 1), and in *Farenga v Farenga* (NYLJ, March 14, 1983, p 16, col 1). Another trial court has held that while fault is relevant, it nevertheless would not preclude a distributive award since under equitable distribution "each party to the marriage is entitled to take with him, that which he contributed" (see *Giannola v Giannola,* 109 Misc 2d 985, 987). And in *Kobylack,* Special Term concluded that fault should be used "only as a consideration to tilt the balance where there are insufficient assets to make the parties economically 'whole'" (see *Kobylack v Kobylack,* 110 Misc 2d 402, 408, mod on other grounds 96 AD2d 831, *supra*).

Likewise, no national consensus has developed among those States which follow equitable distribution. Fault has been held to be relevant in some States (see, e.g., *Beede v Beede,* 186 Conn 191; *Peters v Peters,* 248 Ga 490; *Bohl v Bohl,* 232 Kan 557) and irrelevant in others (see, e.g., *Eaton v Eaton,* 447 A2d 829 [Me]; *Jones v Jones,* 334 NW2d 492 [SD]; *Fisher v Fisher,* 648 SW2d 244 [Tenn]). On the one hand, fault has been held to be irrelevant under a catchall factor similar to that in New York (see *Matter of Thorpe v Thorpe,* 108 Wis 2d 189), but, on the other, it has been held relevant under a "no fault" divorce law (see *Davey v Davey,* 106 Mich App 579).

It has been repeatedly emphasized that the marriage relationship is to be viewed as, among other things, an economic partnership and that upon its dissolution the accumulated property should be distributed on the basis of the economic needs and circumstances of the case and the parties (see *Conner v Conner,* 97 AD2d 88, 107; Governor's approval memorandum, McKinney's Session Laws of NY, 1980, p 1863; Assembly memorandum, NY Legis Ann,

1980, pp 129, 130). It would be, in our view, inconsistent with this purpose to hold that marital fault should be considered in property distribution. Indeed, it would introduce considerations which are irrelevant to the basic assumptions underlying the Equitable Distribution Law, i.e., that each party has made a contribution to the marital partnership and that upon its dissolution each is entitled to his or her fair share of the marital estate (see *Giannola v Giannola,* 109 Misc 2d 985, 987, *supra*). Moreover, fault is very difficult to evaluate in the context of a marriage and may, in the last analysis, be traceable to the conduct of both parties (cf. Scheinkman, 1981 Practice Commentary, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law, C236B:13, p 160, 1983-1984 Pocket Part).

Thus we conclude that, as a general rule, the marital fault of a party is not a relevant consideration under the Equitable Distribution Law in distributing marital property upon the dissolution of a marriage. This is not to deny, however, that there will be cases in which marital fault, by virtue of its extraordinary nature, becomes relevant and should be considered. But such occasions, we would stress, will be very rare and will require proof of marital fault substantially greater than that required to establish a bare prima facie case for matrimonial relief. They will involve situations in which the marital misconduct is so egregious or uncivilized as to bespeak of a blatant disregard of the marital relationship — misconduct that "shocks the conscience" of the court thereby compelling it to invoke its equitable power to do justice between the parties. Thus, for example, in *D'Arc v D'Arc* (164 NJ Super 226, mod on other grounds 175 NJ Super 598, cert den 451 US 971), the New Jersey Superior Court considered the fact that during the pendency of the divorce proceedings the husband had offered $50,000 for the murder of his wife, even though it had previously been held by the Supreme Court of New Jersey that fault was not to be relied upon (see *Chalmers v Chalmers,* 65 NJ 186). As the *D'Arc* court stated, "where a spouse has committed an act that is so evil and outrageous that it must shock the conscience of everyone, it is inconceivable that this court should not consider his conduct when distributing the marital assets equitably" (164 NJ

Super 226, 241, *supra*). But even in the extreme case it is to be noted that fault is only 1 factor among 10 to be considered in determining the distribution of marital assets.

In concluding that marital fault will not, generally, affect the distribution of marital property under equitable distribution, we recognize that the role of marital fault may be different in the context of fixing an award of maintenance (Domestic Relations Law, § 236, part B, subd 6; cf. *Schor v Schor,* 97 AD2d 460; Scheinkman, 1981 Practice Commentary, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law, C236B:21, p 167, 1983-1984 Pocket Part). However, in view of the fact that an award of maintenance was not sought in the case at bar, we do not pass upon the issue.

It is important to note, in addition, that our holding is not intended to alter the role of economic fault in equitable distribution. Economic fault, which consists of dissipation or secreting of assets, or other conduct which unfairly prevents the court from making an equitable distribution of marital property, has generally been considered relevant to the distribution (see *Gottlieb v Gottlieb,* NYLJ, June 29, 1982, p 15, col 1; *Whelan v Whelan,* NYLJ, Sept. 24, 1981, p 12, cols 5-6). And, "the wasteful dissipation of family assets by either spouse" is an express factor which must be considered in fixing an award of maintenance (Domestic Relations Law, § 236, part B, subd 6, par a, cl [9]).

Although we agree with Special Term that marriage is more than just an economic partnership and recognize that marital misconduct will often have economic ramifications, we find economic fault to be logically distinguishable from marital fault. The latter cannot be transformed into the former by reason of its consequences. In the case at bar, the defendant's misconduct consisted solely of his abandonment of the plaintiff, the establishment of which he did not even contest based upon the stipulation entered into at the start of the trial. Although we do not condone such conduct, it is neither egregious nor outrageous and should not have been considered by Special Term in distributing the marital property. Furthermore, stipulations such as the one entered into here are to be encouraged and litigation of the

issue of marital fault discouraged. Litigants should be allowed to remove fault from the trial except insofar as it is necessary to establish a cause of action for matrimonial relief.

Accordingly, we reverse Special Term's determination insofar as it distributed the marital property on the basis of fault. We conclude, however, that Special Term's factual finding that but for the element of fault the marital property should be distributed 60% in favor of the plaintiff and 40% in favor of the defendant is supported by the record. We thus affirm that finding and remit the matter to Special Term for entry of an appropriate judgment distributing the marital property in its discretion in accordance with the provisions of the equitable distribution statute. We would note that our affirmance of the finding as to the percentages of the marital property which are to be awarded to the respective parties is not intended to intrude in any respect upon Special Term's discretion to make an order regarding the use and occupancy of the marital residence (Domestic Relations Law, § 236, part B, subd 5, par f).

■ Finally, we hold that Special Term was correct in its award of child support. It is not necessary that a party be contractually entitled to certain income before such income can be considered in arriving at the fair amount of child support to be paid (see *Tedrow v Tedrow*, 36 AD2d 686). The evidence is clear that the defendant has been receiving monthly gifts from his aunt for some time and that it is her intention to continue making these gifts as long as she is able to do so. In these circumstances, the gifts were properly taken into consideration. In the event the payments cease at some later date, the defendant is free to seek a downward modification in his child support obligation in the appropriate manner.

MANGANO, J. P., O'CONNOR and BOYERS, JJ., concur.

Judgment of the Supreme Court, Nassau County, entered January 17, 1983, modified, on the law and the facts, by deleting the provision which awarded all the marital property to the plaintiff. As so modified, judgment affirmed insofar as appealed from, without costs or disbursements, and matter remitted to Special Term for further proceed-

ings consistent herewith. The finding that but for the element of fault the marital property should be distributed 60% in favor of the plaintiff and 40% in favor of the defendant is affirmed.