OPINION OF THE COURT
Gerard E. Delaney, J.
Under CPLR 3217 (subd [b]) may a party plaintiff discontinue her cause of action for “fault” divorce under section 170 of the Domestic Relations Law when the application is made in opposition to defendant’s motion for “reverse summary judgment” and when such plaintiff’s reasons for discontinuance relate not to the substance of the marriage, e.g., the possibility of reconciliation or continued love and mutual respect and understanding between the parties, but, rather, relate to social, medical, political or financial reasons?
Inasmuch as the court on the instant application finds “special circumstances” which would inure to the prejudice of the defendant by forcing him to remain in an obviously “dead” marriage and facing thereby additional litigation on his part and the continuance of uncertain prospects for his own life, career decisions and prospects, coupled with the trend of law, both legislative and judicial, to avoid litigation, this court answers the above question in the negative.
*285 In this matrimonial action, defendant moves this court for “reverse” summary judgment on plaintiff’s first cause of action for divorce on abandonment. (Domestic Relations Law, § 170, subd [2].) Defendant has fully admitted details of his abandonment and further seeks leave to amend his answer reflecting same and by the nature of the amended answer implicitly seeks to withdraw his counterclaim for divorce based upon cruel and inhuman treatment and constructive abandonment.
On such application, however, plaintiff has now cross-moved for leave to discontinue “that portion of the instant action relating to the marital status and (to) sever said issues from all other ancillary issues to be heard by the trial court”. Assumably such “ancillary issues” would be those as would exist under defendant’s counterclaim if (1) leave to discontinue were granted to plaintiff and (2) the court were to deny the defendant’s motion for “reverse” summary judgment and/or by way of a separate action in Supreme or Family Court under article 4 of the Family Court Act.
“Absent special circumstances * * * parties should not be compelled to litigate.” (Cogan v Cogan, 90 AD2d 491, 492; accord Tucker v Tucker, 55 NY2d 378, 383.) However, “[particular prejudice to the defendant or other improper consequences flowing from discontinuance may * * * make denial of discontinuance permissible, or * * * obligatory.” (Tucker v Tucker, supra, at pp 383-384.) Such a motion is addressed to the “legal, not the arbitrary, discretion of the court”. (Winans v Winans, 124 NY 140, 145.) However, as indicated below, this court views Cogan as a two-edged sword.
Plaintiff claims she seeks partial discontinuance of her action “solely to maintain the marital relationship [t]o remain in this country for social and medical reasons”, though she also claims that she may also face deportation if the divorce is granted and that defendant would not be prejudiced by the discontinuance. Nowhere does she express a desire by such requested discontinuance to attempt to revive the failed marriage or attempt reconciliation, only in substance that a divorce would be inconvenient for *286 her status as an alien and possibly detrimental to the quality of medical care which she could receive in this country.
Both parties are nonresident aliens based upon defendant’s employment with I.B.M. Their visas expire in August, 1984, when defendant’s current employment contract expires and they are to return to Italy. Defendant claims prejudice in his career assignments with I.B.M. by the nature of the unresolved status of his marriage and the fact that he has incurred over $3,000 in legal fees to date in the defense of this action which plaintiff now seeks to abort. However, “[t]he fact that defendant has been subjected to the expense and trouble of defending the suit may entitle him to costs, but generally would not preclude plaintiff from discontinuing the [suit]”. (Valladares v Valladares, 80 AD2d 244, 258, affd 55 NY2d 388.)
Of more import to this court is defendant’s claim that “[i]t is clearly detrimental of me and my family both psychologically and economically to have this matter withdrawn. Furthermore, I must be able to make the right career decision in order to earn a livelihood that will best support my dependents * * * This situation has adversely affected my health and has further deteriorated my relationship with my child.”
While the right of discontinuance in other type actions appears to be liberally construed, there is an exception where matrimonial cases are involved. (See Hutchinson v Hutchinson, 87 Misc 2d 1071, affd 55 AD2d 817, and cases cited therein at p 1075; see Winans v Winans, supra, at p 145.) “Discontinuance of a matrimonial action, unlike other actions, is a matter addressed to the court’s discretion. To exercise such discretion, however, good reasons based upon the plaintiff’s ‘good faith, honesty and sincerity’ should be shown” (Gilstein v Gilstein, 23 AD2d 678, 679, citing Levey v Levey, 169 App Div 966). In Gilstein the court noted that no possibility of reconciliation had been shown (see, also, Armstrong v Armstrong, 176 Misc 240, 242) and determined that monetary considerations would not warrant the granting of the plaintiff wife’s motion to discontinue.
*287 It is improper to seek to circumvent a legislative determination by procedural device such as discontinuance of the action. (See, generally, Tucker v Tucker, supra; Valladares v Valladares, supra; cf. Battaglia v Battaglia, 59 NY2d 778.) Both Tucker v Tucker and Cogan v Cogan indicated that “absent special circumstances * * * parties should not be compelled to litigate” (90 AD2d, at p 492) and that the court in a proper case, where a “plaintiff is less [than] open in disclosing the objective behind * * * her motion to discontinue, or even affirmatively masks its ulterior purpose * * * the court might assure accomplishment of the legislative intent [imposing] terms and conditions on a discontinuance * * * with prejudice to institution of a subsequent matrimonial action based on any [incident]” which might have been the basis of an action prior to the effective date of the Equitable Distribution Law. (Tucker v Tucker, supra, at p 384, n 2.)
Cogan (supra) allowed plaintiff to discontinue with prejudice on the eve of trial and imposed such “Tucker” sanctions even though it was plaintiff’s “avowed purpose in seeking such relief to commence a new action under the recently enacted Equitable Distribution Law” (Cogan v Cogan, Supreme Ct, Westchester County, Sept. 30, 1981, Dachenhausen, J., index No. 16869/80).
Certainly, in Cogan (supra), if the plaintiff could claim legal grounds of divorce arising out of conduct occurring after the effective date of equitable distribution, she would be justified in commencing same and entitled to the benefits thereof. The instant matter does not present the “old law — new law” controversy of Tucker et al. There is no doubt but that this action is governed completely by the “Equitable Distribution Law” (Domestic Relations Law, § 236, part B).
“[M]arriage is more than just an economic partnership” (Blickstein v Blickstein, 99 AD2d 287, 293). Indeed, the Legislature has recognized that there indeed may be instances where there comes a time when a marriage is no longer viable in substance though such may continue in form. “[I]t is socially and morally undesirable to compel couples to a dead marriage to retain an illusory and deceptive status and that the best interests not only of the *288 parties but of society itself will be furthered by enabling them ‘to extricate themselves from a perpetual state of marital limbo.’ ” (Gleason v Gleason, 26 NY2d 28, 35.) The Legislature in response to such recognition enacted the “no-fault” divorce grounds of subdivisions (5) and (6) of section 170 of the Domestic Relations Law so as to end such charades if there were no possibility of reconciliation.
There is no longer a prohibition against the granting of summary or reverse summary judgment in matrimonial actions. (See, generally, Leeds v Leeds, 60 NY2d 641; Rauch v Rauch, 91 AD2d 407; cf. CPLR 3212, subd [d] [repealed by L 1978, ch 532, eff Jan. 1, 1979].) “The Legislature passed the ‘no-fault’ grounds (Domestic Relations Law, § 170, subds [5], [6]) for divorce in order to enable parties to extricate themselves from a dead marriage more easily” (Hickox v Hickox, 72 AD2d 688, 689). By its elimination of the prohibitions against summary judgments in matrimoniáis, it is readily seen that the court systems are saved the unnecessary time and expense of trying the matrimonial aspect of the case in the appropriate circumstances. Compare Hickox v Hickox (at p 689), Rauch v Rauch (supra), and the discussion of the interest of the public in general in matrimonial actions in Winans (124 NY, at p 145).
Indeed, with the recently recognized concept of “reverse summary judgments” (cf. Leeds v Leeds, supra), the extrication of parties from “dead marriages” has been made more swift and the proper economic distribution of the assets of the marriage and other ancillary issues made paramount to fault in most instances. (Cf. Blickstein v Blickstein, supra.) This is not to say that a proper “ground” for the divorce need not exist under section 170 of the Domestic Relations Law, only that “litigation of the issue of marital fault [is to be] discouraged. Litigants should be allowed to remove fault from the trial except insofar as it is necessary to establish a cause of action for matrimonial relief”. (Blickstein v Blickstein, 97 AD2d 287, 293-294, supra.)
Accordingly, this court holds that wherein a party has instituted a matrimonial action on fault grounds and thereafter moves to discontinue his or her action under *289 CPLR 3217 (subd [b]) only upon being served with a motion by the defendant for “reverse summary judgment” wherein full admission is made by such defendant to establish at least one of plaintiff’s grounds for divorce and plaintiff’s motion to discontinue is not based upon the continuing viability of the marriage, or upon a good-faith, honest belief in reconciliation but only upon financial or, in this instance, “social, medical” or political consequences of such divorce, that such motion to discontinue should be denied. By such determination this court recognizes “special circumstances” (cf. Cogan v Cogan, supra), present in such a situation which work to the “prejudice of” a defendant in such a case were the motion to discontinue be allowed, to wit, that such a defendant would be forced to remain in “what is certainly a dead marriage” of social and moral fraud and/or to needlessly commence or continue separate litigation to determine a separate fault ground for the divorce.
In the instant case, allowing the plaintiff to discontinue would also appear to serve no useful purpose inasmuch as defendant’s counterclaim is outstanding and litigation would not be avoided on her part. This case is on the Trial Calendar and has been called for April 23,1984. Under the circumstances as stated above, litigation on the divorce grounds is a needless waste of time and expense both for the parties and for the public interest.
The cross motion by plaintiff to discontinue her causes of action is denied. Defendant’s motion for summary judgment of divorce on plaintiff’s first cause of action (grounds of abandonment [Domestic Relations Law, § 170, subd (2)]) is granted and such cause is severed accordingly. In view of this determination, plaintiff’s second and third causes of action, together with defendant’s counterclaim are dismissed as academic. (Cf. Hickox v Hickox, 72 AD2d 688, supra.)
Defendant’s motion to amend his answer is also denied as moot in light of the aforegoing decision.
To the extent that fault might be considered under part B of section 236 of the Domestic Relations Law (cf. Blickstein v Blickstein, supra) on the economic trial such may *290 still be properly before the hearing Justice. (Hickox v Hickox, supra; Peerce v Peerce, 97 AD2d 718.)
This matter shall remain on the calendar for the date indicated for a hearing on “distribution” by the Justice presiding. Pending the decision and entry of the order by the hearing Justice on distribution, both parties are stayed from transferring, encumbering or alienating any and all assets, except in the ordinary course of business. (Cf. Peerce v Peerce, supra.) Such pendente lite order as may have been previously entered shall remain in effect pending the final decision of the hearing Justice inasmuch as this bifurcated “action” continues until the entry of the final judgment which would incorporate a permanent award, if any. (Cf. Domestic Relations Law, § 236, part B, subd 6, par a.)
Submit judgment of divorce only.