■ VICTOR BRANCOVEANU, Appellant, v MARIANA BRANCO-VEANU, Respondent.—In an action for a divorce and ancillary relief, the plaintiff husband appeals (1), as limited by his brief, from so much of a judgment of the Supreme Court, Queens County (Corrado, J.), dated April 30, 1987, as, *inter alia,* (a) granted a divorce in favor of the defendant wife and dismissed his complaint for a divorce, (b) awarded custody of the two infant children of the marriage to the wife and directed visitation, (c) awarded the wife child support in the sum of $200 per week, (d) awarded exclusive occupancy of the marital residence to the wife and ordered that upon the sale of the property the net proceeds be divided 60% to the wife and 40% to him, (e) ordered that he pay all medical and health insurance for the benefit of the infant children, (f) granted the wife leave to enter a money judgment against him in the sum of $18,827.65, (g) granted the wife's attorney leave to enter a money judgment against him in the amount of $500, (h) denied his application for maintenance and equitable distribution of the wife's dental practice and certain real property, and (i) denied his application for custody of the infant children and child support; (2), as limited by his brief, from so much of an order of the same court, dated May 13, 1987, as denied that branch of his motion which was for a downward modification of child support; (3) from an order of the same court, dated June 22, 1987, which denied his motion to set aside the memorandum decision of the court dated April 10, 1987, upon which the April 30, 1987, judgment was based and to require the wife to return to him items of personalty taken from the marital residence; (4), from an order of the same court, dated August 27, 1987, which denied his motion to hold the wife in contempt for willfully violating the visitation order and for a

suspension of the child support payments; (5), from so much of an order of the same court also dated August 27, 1987, as failed to grant certain increased child visitation and a downward modification of his child support obligation; (6), from stated portions of an order of the same court, dated August 31, 1987, which, *inter alia,* (a) denied those branches of his motion which were to punish the wife for contempt, for full custody of the two infant children, for the termination of child support and cancellation of arrears of child support, and to require the wife to resume using her maiden name, and (b) granted that branch of the wife's cross motion which was to compel him to produce life insurance policies for the children as required by the judgment of April 30, 1987; (7) from an order of the same court dated September 16, 1987, which granted counsel fees to the wife in the amount of $4,000 and (8) from an order of the same court dated September 16, 1987, which granted those branches of the wife's cross motion which were for leave to enter a money judgment in the amount of $1,400 representing arrears of child support and $500 in counsel fees.

Ordered that the judgment dated April 30, 1987, is modified by deleting the provision thereof granting the defendant leave to enter a money judgment against the plaintiff in the sum of $18,827.65; as so modified the judgment dated April 30, 1987, is affirmed insofar as appealed from; and it further,

Ordered that the order dated May 13, 1987, is affirmed insofar as appealed from; and it is further,

Ordered that so much of the appeal from the order dated June 22, 1987, as denied that branch of the plaintiff's motion which was to set aside a memorandum decision dated April 10, 1987, is dismissed, and the order dated June 22, 1987, is otherwise affirmed; and it is further,

Ordered that the order dated August 27, 1987, which, *inter alia,* denied the plaintiff's motion to hold the defendant in contempt is affirmed; and it is further,

Ordered the order dated August 27, 1987, which, *inter alia,* failed to grant certain increased child visitation, is affirmed insofar as appealed from; and it is further,

Ordered that the order dated August 31, 1987, is affirmed insofar as appealed from; and it is further,

Ordered that the orders dated September 16, 1987, are affirmed; and it is further,

Ordered that the matter is remitted to the Supreme Court, Queens County, for a hearing as to the amount of arrears

owed by the plaintiff under the order dated January 10, 1985; and it is further,

Ordered that the defendant is awarded one bill of costs.

The parties, both immigrants from Romania, were married on August 5, 1976. There are two infant children of the marriage. The husband is a practicing attorney who had been an attorney in Romania and who was admitted to the New York Bar in 1978. The wife had been a practicing dentist in Romania for 10 years before emigrating in 1976. She married the husband within days of her arrival in this country. The wife became certified to practice dentistry here in November 1978 and immediately opened her own practice in December of that year. After the marriage, the parties bought a two-family home in Rego Park, Queens. The wife initiated an action for divorce in 1982 but the action was discontinued by stipulation dated July 27, 1983. The instant action was commenced in 1984 by the husband. The wife asserted a counterclaim for a divorce on the ground of cruel and inhuman treatment.

With respect to the husband's initial argument that the wife should not have been granted a divorce on the ground of cruel and inhuman treatment, we note that the evidence adduced at the trial amply supported the trial court's determination. Competent evidence established that the husband attempted to engage a person to murder the wife and dispose of the body; that he had continually threatened her and had struck her causing her to seek emergency medical treatment; that he called her a "whore" and a "lesbian" in the presence of her children and others; that he made continual threats over the years that he would kill her; and that he caused her to be falsely incarcerated for a period of almost five hours. These facts amply support the grant of the divorce to the wife *(see, Bulger v Bulger,* 88 AD2d 895).

The husband, on the other hand, was not entitled to a divorce on the ground of cruel and inhuman treatment as he failed to allege, much less prove, that the wife was guilty of conduct which would make it unsafe or improper for him to continue to cohabit with her *(see,* Domestic Relations Law § 170 [1]).

Turning to the issue of equitable distribution, we find no impropriety in the court's award. The three items of marital property, the husband's law practice, the wife's dental practice and the marital residence were all considered by the court. As to the building known as 817 Onderdonk Avenue where the

wife maintained her office, the husband failed to offer any legally competent evidence that the wife and not her sister was the owner and that this property should have been considered marital property (see, Gredel v Gredel, 128 AD2d 834, lv dismissed 70 NY2d 693).

In light of the conflicting testimony as to which spouse had made the down payment when the marital residence was purchased in 1979, we accept the trial court's finding that the funds were realized from the income derived through the wife's dental practice. The husband's claim that he had received approximately $65,000 from his mother upon the sale of the family jewelry which she brought from Romania was not believed by the trial court and we find no basis to disturb that determination. In light of the fact that the premises were purchased with the wife's funds and considering the contributions made by the wife as mother, homemaker and primary income producer, we conclude that the division of the proceeds following the sale of the marital residence of 60% to the wife and 40% to the husband was properly made under the considerations set forth in Domestic Relations Law § 236 (B) (5) (c). We decline to accept the husband's claim that the court considered the value of the wife's dental practice in making its determination and note that there was no distribution made of his law practice.

Although the general rule is that marital fault is not a relevant consideration under the equitable distribution provisions of the Domestic Relations Law, there are situations where the marital misconduct is so egregious and shocking to the court that it is compelled to invoke its equitable power so that justice may be done between the parties (see, O'Brien v O'Brien, 66 NY2d 576; Blickstein v Blickstein, 99 AD2d 287). This is one of those rare cases.

There was testimony received at both the pendente lite hearing and at trial from Arsene Silviu, an admitted former instructor at a Romanian terrorist camp, that the husband had attempted to engage him to murder the wife. Silviu gave detailed testimony as to how the husband initially approached him with a proposal that he give perjured testimony against the wife. Later, the husband took Silviu to Bath, Maine, and showed him an out-of-the-way bridge from which the wife's corpse, weighted with stones, could be dropped after Silviu killed her in New York. The husband told Silviu that he could procure a gun and paid $500 to Silviu to think about it. The husband's offer was $20,000. After learning that Silviu told

the wife of his machinations, the husband offered Silviu $5,000 to change his testimony.

Pursuant to Domestic Relations Law § 236 (B) (5) (d) (13), in determining an equitable distribution of marital property, the courts are empowered to consider, in addition to the 12 factors which are listed, "any other factor which the court shall expressly find to be just and proper" in its distribution of the marital assets. The trial court herein considered the other 12 factors enumerated in the statute along with the husband's fault and determined that, under the unique factual circumstances herein, equity does not permit the husband to share in the dental practice which the wife built through her own diligent labor. We agree that a great injustice would result if the husband, who unsuccessfully contrived to have his wife murdered, was granted an award of a portion of the value of her dental practice (see, D'Arc v D'Arc, 164 NJ Super 226, 395 A2d 1270, mod on other grounds 175 NJ Super 598, 421 A2d 602, cert denied 451 US 971).

Further, we are satisfied that the wife was properly granted custody of the children and exclusive occupancy of the marital residence. The record amply demonstrates that the wife has provided the children with private schooling and extracurricular activities and has cared for them when they return from school. The husband, on the other hand, lives in a one-bedroom apartment which he proposes to share with his two daughters. While there is no allegation that the husband is an unfit parent, we concur with the trial court that the best interests of the children will be served by continuing custody in the wife with liberal visitation rights to the husband (see, Eschbach v Eschbach, 56 NY2d 167; Friederwitzer v Friederwitzer, 55 NY2d 89). As the husband has failed to establish the need for an immediate sale of the marital home, the award of exclusive occupancy to the wife as custodial parent was properly made pursuant to Domestic Relations Law §§ 234 and 236 (B) (5) (f) (see, Blackman v Blackman, 131 AD2d 801).

With respect to the amount of $18,827.65 calculated by the court to be owing to the wife as arrears for the husband's court-ordered share in the maintenance of the marital residence from January 10, 1985, through April 15, 1987, the record fails to reveal how the court arrived at this figure. Therefore we remit the matter to the trial court for a hearing on this issue.

Finally, we find that the award of $200 per week as child support for the two infant children was not inappropriate, as

the court properly considered both parties' income and earning potential, the financial needs of the children, the physical and emotional health of the children, the standard of life enjoyed by them and the nonmonetary contributions of the parties (Domestic Relations Law § 236 [B] [7]). We note that the husband failed to set forth evidence of financial hardship in his postjudgment motions for downward modification of support payments other than his conclusory statements that the amount of support was more than he could afford.

The appeal from so much of the order dated June 22, 1987, as denied that branch of the husband's motion which was to set aside the memorandum decision dated April 10, 1987, is dismissed, because no appeal lies from an order denying a motion to set aside and/or vacate a decision (see, Behrens v Behrens, 143 AD2d 617).

The remaining portion of that order, and the other six orders, are affirmed for the reasons stated at the Supreme Court. Lawrence, J. P., Eiber, Spatt and Balletta, JJ., concur.