OPINION OF THE COURT
Jacqueline W. Silbermann, J.
In this matrimonial action, the defendant (hereinafter husband) moves by order to show cause for an order precluding the plaintiff (hereinafter wife) from offering, at trial, any proof and testimony concerning the husband’s conduct during the *727 marriage, prior to April 22, 1999, on the basis that such conduct is not a “just and proper” factor to be considered in connection with the equitable distribution of the parties’ marital property, as the conduct is not egregious and does not “shock the conscience” of the court. (Domestic Relations Law § 236 [B] [5] [d] [13]; O’Brien v O’Brien, 66 NY2d 576, 589 [1985]; Blickstein v Blickstein, 99 AD2d 287 [2d Dept 1984].)
The wife opposes the motion.
The parties were married on May 17, 1978 and have six children ranging in age from 9 to 20 years. On the evening of April 15, 1999, the wife allegedly told the husband she wished to have a divorce. Thereafter, on April 22, 1999, at approximately 5:00 a.m., the husband repeatedly struck the wife about the face and head with a barbell. The husband was arrested and indicted for attempted murder in the second degree and assault in the first degree. On August 11, 2000, the husband pleaded guilty to assault in the first degree, confirming he struck the wife with a barbell with the intent to cause serious physical injury. He was sentenced to a term of imprisonment of 8V3 years, which he is currently serving at the Five Points Correctional Facility in Romulus, New York.
Prior to the commencement of the equitable distribution trial of this action, the parties stipulated that the wife shall be granted a divorce pursuant to Domestic Relations Law § 170 (1), predicated upon the facts set forth in the plea of guilty • entered by the husband in the criminal proceeding. Further, the court notes there is no dispute between the parties that the husband’s conduct resulting in the above-referenced plea may be considered by the court in connection with the equitable distribution of the parties’ marital assets pursuant to Domestic Relations Law § 236 (B) (5) (d) (13) and relevant case law, including O’Brien v O’Brien (66 NY2d 576 [1985], supra) and Blickstein v Blickstein (99 AD2d 287 [2d Dept 1984], supra).
The question raised in the instant motion appears to be one of first impression, to wit: In considering the equitable distribution of marital property, may the court properly admit evidence at trial of a pattern of domestic violence in a marriage of long duration, pursuant to Domestic Relations Law § 236 (B) (5) (d) (13) (which directs the court to consider “any other factor which the court shall expressly find to be just and proper”) and the standard set forth in the aforementioned cases of O’Brien (supra) and Blickstein (supra)? For the reasons more fully set forth below, the court answers the question in the affirmative.
*728 Factual Background
During the wife’s examination before trial, she enumerated a multitude of events spanning the length of the marriage, which, collectively, she asserts, constitute egregious conduct reducing or eliminating the husband’s entitlement to equitable distribution of the marital property. Those acts include, but are not limited to, the following:
(1) That the husband struck and beat several of his children on numerous occasions;
(2) That the husband repeatedly used violence and vulgar language with the wife and the children, housekeepers, and people who visited the marital residence;
(3) That the husband put the parties’ children at risk, used vulgar language, and insulted the children;
(4) That the husband put the parties’ children at risk by threatening the wife;
(5) That the husband shamed the wife in front of her father by calling her a “f * * * ing idiot” because she made a mistake in reading him a road map;
(6) That the husband regularly told the wife his temper was so violent his mother would never permit a firearm in the house because she knew he would use it to kill someone;
(7) That he insulted the wife and used vulgar and obscene language with the wife on a regular basis;
(8) That the husband engaged in a type of psychological warfare of intimidations by not speaking to the wife or by treating her rudely if he didn’t get his way;
(9) That the husband called the wife an old hag and said her skin was hanging off her and that he should discard her for a younger woman;
(10) That in the summer of 1996, on vacation with the wife’s friend, her friend’s husband and her friend’s children, the husband engaged in such abusive behavior that the wife packed up to leave in the middle of the vacation;
(11) That the husband told the children the wife was a whore because she had previously been married;
(12) That the husband threatened the wife with his *729 hand, fist and with kicks;
(13) That the husband routinely walked around the house both in the morning and at night in drawstring pajamas with the drawstring opened to an extent that his sexual organs were exposed with the children and their friends in the home;
(14) That the husband was unable to control his temper in front of the children and housekeepers;
(15) That the husband stood by his principle that it was acceptable to beat children because he had been raised that way, that his mother beat him, and that he believed it was perfectly fine to beat children. He said routinely that you should kick the s * * * out of them;
(16) That the husband raised his fist to the wife, as well as a telephone and a book;
(17) That the husband called her a “f * * * idiot” and left her to treat herself when she stumbled on a heating duct in his house and sliced open her leg;
(18) That the husband grabbed the wife and twisted her arm in an “excruciating, painful way” causing her housekeeper to intervene;
(19) That the husband spanked the parties’ six-month-old infant for crying;
(20) That the husband belittled the parties’ son who has learning difficulties, called him stupid and an idiot as well as hit him on the face and head;
(21) That the husband refused to believe the diagnoses of their oldest child’s treating psychiatrist who indicated that the child suffered from periods of bipolar behavior. The husband said the child was just a spoiled brat and that what he needed was a good kick and a beating to make him better, and proceeded to do so.
The husband objects to the admission of testimony regarding the above incidents, and incidents of similar conduct cited in the wife’s examination before trial, on the ground that the conduct, taken individually or collectively, does not amount to egregious conduct under the law.
Legal Analysis
The general rule in New York is that marital fault is excluded from consideration in equitable distribution except for “egregious cases which shock the conscience” of the court. (O’Brien v O’Brien, 66 NY2d 576, 589 [1985], supra.) Except for *730 such extreme cases, misconduct is not a “just and proper” consideration pursuant to Domestic Relations Law § 236 (B) (5) (d) (13) because (a) it is inconsistent with the underlying assumption that a marriage is in part an economic partnership and upon its dissolution the parties are entitled to a fair share of the marital estate, (b) because fault usually is difficult to assign, and (c) because “introduction of the issue may involve the courts in time-consuming procedural maneuvers relating to collateral issues.” (Id., at 590.)
The “egregious conduct” standard, as it appears to operate in practice, traditionally has allowed consideration of fault only in cases in which the alleged misconduct amounted to a serious violent felony. Accordingly, it has been held that attempted murder is egregious misconduct (Brancoveanu v Brancoveanu, 145 AD2d 395 [2d Dept 1988]; Wenzel v Wenzel, 122 Misc 2d 1001 [Sup Ct, Suffolk County 1984]), as is rape of a stepdaughter (Thompson v Thompson, NYLJ, Jan. 5, 1990, at 28, col 3), and repeated physical abuse in which, over a 20-year period, the husband slapped the wife’s face weekly, broke her foot by stamping on it, broke her finger, leaving it permanently deformed, pushed her, causing a broken arm with a permanent 40% loss of use, and punched her so that she sustained dental damage requiring caps and root canal work. (Debeny v Debeny, NYLJ, Jan. 24, 1991, at 29, col 2.)
In deference to this standard, courts have held that conduct consisting primarily of “verbal harassment, threats and * * * acts of minor domestic violence, is * * * not so outrageous or extreme as to shock the conscience of the court and to justify [a party’s] divestiture of * * * marital property.” (Kellerman v Kellerman, 187 AD2d 906, 907-908 [3d Dept 1992].) It has further been held that the combination of a wife’s open adultery, physical abuse (including scratching, biting and hair pulling), verbal abuse, and wounding of her husband with a knife while breaking into his locked briefcase, does not constitute egregious fault.
In considering whether to expand the egregious conduct standard to include a pattern of physical and emotional abuse during a lengthy marriage, the court looked to other States for guidance. In an article entitled The Place of Fault in a Modern Divorce Law (28 Ariz St LJ 773 [Fall 1996]), Professor Ira Mark Ellman noted that courts in approximately 15 States consider marital fault in the distribution of marital property. For example, the article indicates that in Connecticut, the trial courts are provided wide discretion in property allocations and *731 alimony decisions, allowing the court to consider “ ‘the causes for the * * * dissolution of the marriage’ ” (id., at 832, quoting Conn Gen Stat Annot §§ 46b-82, 46b-81 [c]; see also, Robinson v Robinson, 187 Conn 70, 444 A2d 234, 235-236 [1982]). In Georgia, fault is relevant to alimony by statute (Ga Code Annot § 19-6-1 [c]), and case law has established that “the conduct of the parties * * * is relevant and admissible” in equitable distribution (Peters v Peters, 248 Ga 490, 491, 283 SE2d 454, 455 [1981]). At least one court in Missouri has held that “the conduct factor becomes important when the conduct of one party to the marriage is such that it throws upon the other party marital burdens beyond the norms to be expected in the marital relationship” (Burtscher v Burtscher, 563 SW2d 526, 527 [Mo Ct App 1978]). Accordingly, in Divine v Divine (752 SW2d 76, 79 [Mo Ct App 1988]), the court held that the husband’s failure to communicate with the wife, as well as his physical abuse, telephone harassment, and false accusation of her, placed undue stress on the wife during the marriage. Similarly, Professor Ellman noted that a New Hampshire statute, which is apparently applicable to both alimony and property division, allows consideration of fault where it caused the breakdown of the marriage as well as “substantial physical or mental pain and suffering” or an economic loss. (NH Rev Stat Annot § 458:16-a [II] [l] [1], [2].)
The allegations in the instant action involve the physical and emotional intimidation of the wife and children over the course of many years. A review of literature on the topic of domestic violence reveals that domestic violence produces physical and psychological ramifications in women victims, often causing women to develop “battered woman’s syndrome.” (Walker, The Battered Woman Syndrome [1984].) It is also well established that domestic violence poses a significant threat to children, and that exposure to violence affects a child’s emotional stability, future outlook, and ability to function at school. (Division of Developmental and Behavioral Pediatrics, Silent Victims: Children Who Witness Violence, 269 JAMA 262 [1993].) Children who witness domestic abuse are particularly vulnerable to emotional and developmental problems. (Ibid.) Clinical data now indicates that children who witness family violence will perpetuate the abuse as adults: boys will use violence to resolve conflicts, and girls will see abuse as an integral part of a close relationship. (Ibid.)
Upon consideration of the foregoing case law, statutes, and literature, it is the opinion of this court that a pattern of do *732 mestic violence, properly proven by competent testimony and evidence, is a “just and proper” factor to be considered by the court in connection with the equitable distribution of marital property pursuant to Domestic Relations Law § 236 (B) (5) (d) (13). As eloquently stated by Judge Imbriani in the case of D’Arc v D’Arc (164 NJ Super 226, 242, 395 A2d 1270, 1278 [1978]), “[t]he obligation of th[e] court is to implement the purpose of law, which is to do justice, and not to mechanically apply established principles of law, even when they compel an absurd result.” In the case at bar, the wife alleges the husband engaged in conduct resulting in lasting emotional and physical harm to herself and the parties’ children. In this court’s view, such conduct, if proven, is so egregious and shocking that the court must invoke its equitable power so that justice may be done between the parties.
Accordingly, the husband’s motion to preclude the wife from testifying to instances of domestic violence during the parties’ 21-year marriage is denied to the extent that the wife may testify to acts of physical or emotional abuse committed upon herself or the children, to the extent the acts were committed in her presence, including but not limited to the incidents excerpted by the court from the wife’s examination before trial.