696 So.2d 1186 (1997)
Janet L. COOPER, Appellant,
v.
Owen E. KAHN, Appellee.
No. 94-1348.
District Court of Appeal of Florida, Third District.
April 23, 1997.
Rehearing Denied July 30, 1997.
*1187 Ruden, McClosky, Smith, Schuster & Russell and Gill S. Freeman, Miami; Richman, Greer & Weil and Gerald F. Richman, Miami, for appellant.
Leinoff & Silvers and Andrew M. Leinoff, Coral Gables, and Mark A. Gatica, Miami, for appellee.
Before SCHWARTZ, C.J., NESBITT, J., and BARKDULL, Senior Judge.
NESBITT, Judge.
In June 1988, Janet L. Cooper filed a number of emergency motions as well as a petition for dissolution of marriage from husband Owen E. Kahn. Thereafter a general master entered his report which included a finding of no merit to Cooper's allegations that Kahn had sexually abused the couple's then two year old son, S.C.K. The trial court approved that report in April 1989. Before final judgment and despite previous restraining orders enjoining both parties from removing S.C.K. from Florida, Cooper fled the state with the boy. On September 22, 1989, the trial court entered final judgment of dissolution and awarded sole custody of S.C.K. to Kahn, reserving jurisdiction to determine the appropriate amount of child support. Cooper's counsel was present at all proceedings. Cooper did not appeal that judgment.
Cooper and S.C.K. were apprehended in Oregon in April 1991. At the time of Cooper's capture, the trial judge entered an order confirming his earlier decision and ordering Kahn to take immediate custody of S.C.K. In June 1991, Cooper's mother filed a dependency petition again alleging the earlier sexual abuse of S.C.K. In response, the trial court ordered an evaluation of S.C.K. Kahn appealed and this court, on August 9, 1991, vacated the trial court's order as a "totally unauthorized exercise of jurisdiction over a cause which has long since been terminated by final judgment," and directed the trial court to terminate proceedings and effectuate the orders of September 22, 1989 and April 1991.
Thereafter followed our order ten days later, stating that "[b]y entertaining further proceedings herein ... the trial court has unlawfully departed from the specific direction of this court, contained in our opinion of August 9, 1991.... Upon any further refusal or delay of the trial court in adhering to the mandate and direction of this court, we will ourselves enter the order required, ... and entertain such other further proceedings as may be appropriate. See State ex rel. Schwartz v. Lantz, 440 So.2d 446 (Fla. 3d DCA 1983), pet. review dismissed, 447 So.2d 887 (Fla.1984)...." Kahn v. Cooper, 583 So.2d 1116, 1117 (Fla. 3d DCA 1991).
The trial court then entered an order in compliance with this court's mandate, sole custody of the child being with the father, with the mother being prohibited from visitation without further court order. In March 1992, the trial court commenced an evidentiary hearing on a motion by Cooper for visitation. The trial judge ordered a psychological evaluation of Cooper. A petition for extraordinary writ was then filed on behalf of S.C.K. with the Supreme Court. The Supreme Court entered an order transferring the case back to the circuit court. Judge Barad, the trial judge who ultimately wrote the order under review, was appointed to hear the case.
Cooper continued in her efforts to have S.C.K. removed from Kahn's home. Before the case was finally heard, the trial court considered several emergency motions by Cooper, and denied each one. In the three week trial which followed, the trial judge ultimately appraised the testimony of a number of experts and finally concluded the child was best left in Kahn's sole custody.
In the order under review, the trial judge imputed income of $5,737 to Cooper and ordered she begin paying child support of $893.11 per month, with payments starting April 1994. The trial judge concluded there had been no substantial change in circumstances since the original designation of Kahn as sole custodial parent. The judge *1188 also found that Cooper failed to prove a modification of custody would be in S.C.K.'s best interest. The judge decided that under the instant facts, shared custody would be detrimental to the child's welfare.
Having serious reservations as to whether Cooper would be able to exercise appropriate self-control, and considering the opinions of several of the testifying experts, the trial judge also found that no change in the ongoing supervised visitation was appropriate. The court then made a series of provisions facilitating Cooper's efforts to see and call S.C.K., ordered the parties to get counseling, and instructed the parties not to discuss the case in front of S.C.K. Cooper appeals in full the trial court's findings and decision. Kahn cross-appeals solely the date from which the trial judge determined support payments should be calculated.
We choose to address two of the points Cooper raises. First we unequivocally reject Cooper's claim that the court's decision not to reopen the issue of the father's alleged abuse years earlier violates the supreme court's mandate.
The supreme court's order makes clear its intention that the abuse issue not be revisited. Nothing in the order overturned or vacated final orders or appellate mandates, nor is there any direction to reopen concluded proceedings. Rather, the supreme court ordered the trial judge to take control of the matter and proceed to final judgment on all pending matters.
Second, we also reject Cooper's claim that the trial court erred in imputing income to her based on the continued monthly payment of Cooper's living expenses by her mother. Section 61.046 Florida Statutes (1995), the definitions section of Chapter 61, instructs that "income" includes "payments, made by any person." Section 61.30(2)(a)(13), Florida Statutes (1995), outlining the child support guidelines, instructs us that the term "income" includes: "[r]eimbursed expenses or in kind payments to the extent that they reduce living expenses [for the parent]." See Thalgott v. Thalgott, 571 So.2d 1368 (Fla. 1st DCA 1990) (concluding the fact that appellee's parents may have, on a regular basis, paid appellee's expenses, went to the issue of appellee's income); Garcia v. Garcia, 560 So.2d 403 (Fla. 3d DCA 1990); see also Chapoteau v. Chapoteau, 659 So.2d 1381 (Fla. 3d DCA 1995); McDaniel v. McDaniel, 653 So.2d 1076 (Fla. 5th DCA 1995).
While Cooper argued the payments made by her mother were "loans," she produced no records or schedules of money borrowed, and she had no idea of the total sum owed. These payments had been made on an extensive period of time. Furthermore, she produced no witness to corroborate her explanation. Here, with the evidence before the court that Cooper's mother paid Cooper's rent, car rental fees, and a number of other monthly expenses, it was within the court's discretion to conclude that Cooper received monthly in kind payments of $5,737, and to impute that amount to Cooper as income. Moreover, the continuing and ongoing nature of the payments differentiated them from the sporadic gifts we considered in Sol v. Sol, 656 So.2d 206 (Fla. 3d DCA 1995).[1] Accordingly, we affirm both the appeal and cross-appeal.
NOTES
[1] We are not confronted here with the factual scenario of a parent, responsible for child support, who receives a lump sum payment which is in reality a payment for their monthly expenses. We nonetheless observe that an equity court will always pierce a veiled attempt to obscure the true character of monies paid or benefits received.