701 So.2d 663 (1997)
Paul ORDINI, Appellant/Cross-Appellee,
v.
Linda ORDINI, Appellee/Cross-Appellant.
No. 96-2788.
District Court of Appeal of Florida, Fourth District.
November 26, 1997.
*664 George Glenn of Grall, Fanaro & Glenn, Vero Beach, for appellant/cross-appellee.
Eric C. Barkett of Jackson & Barkett, and Melly Nofal Corley of Graves and Hill, P.A., Vero Beach, for appellee/cross-appellant.
KLEIN, Judge.
We reverse the judgment dissolving the parties' twelve year marriage, because, among other things, we find that the trial court erred in not taking into account, in determining husband's income, the husband's parents' monthly support of the parties and their children on a regular basis throughout the marriage. We also certify the question as one of great public importance.
The parties, who have two children, are in their thirties. After they got married they lived in New Jersey in a home owned by husband's father's company. In New Jersey husband "worked" for his father, receiving a weekly salary of $400, but he seldom actually worked, unless he felt like it. In addition, husband's parents completely supported the parties so that the total they received, including the salary, was about $6,500 a month.
The parties moved to Florida in the early 1990's, and the husband started an acrobatic flying business, which was in reality a hobby which produced no income. Husband's parents continued to support the parties after the move, as well as after they separated in 1994, and through the time of trial.
The wife, who is thirty-three, did not complete high school, but has an equivalency diploma and, at the time of trial, was attending junior college. She had obtained a manicurist license when they lived in New Jersey; however, she is a hepatitis B carrier, which legally prevents her from being a manicurist in Florida. Her condition also causes her to become fatigued. It was mutually agreed that during the marriage the wife would be a full time homemaker and mother.
The parties do not own a home. Their marital assets consist of a residential lot, a few vehicles, two airplanes, a trailer and camper for a total value of $136,600. The husband owned non-marital assets, as a result of gifts from his parents, consisting of certificates of deposit and an annuity, which totalled $215,600.
For purposes of determining alimony and child support, the court imputed an earning ability of $3,000 a month to the husband and $1,200 a month to the wife. The court awarded the wife permanent periodic alimony of $1,000 a month and guideline child support. The court concluded that it could not consider what the husband's parents had given the parties in the past, in determining the husband's income, citing Sol v. Sol, 656 So.2d 206 (Fla. 3d DCA 1995).
In Sol, which was a modification proceeding, the trial court granted an increase in child support, and included, in arriving at husband's income for the child support guidelines, $20,000 a year, based on gifts that the husband had received from his parents during the three years preceding the modification hearing. In reversing, the third district characterized the evidence as showing "large sporadic cash gifts ... which varied in frequency and amount over the preceding several years." Id. at 208. The court concluded that the "imputation of future gift income" to child support, under those circumstances, was impermissible, citing Bedell v. Bedell, 583 So.2d 1005 (Fla.1991); Shiveley v. Shiveley, 635 So.2d 1021 (Fla. 1st DCA 1994); Bob v. Bob, 310 So.2d 328 (Fla. 3d DCA 1975).
In the present case, as we noted earlier, the support that this couple was receiving monthly from the husband's parents from the inception of the marriage continued through the trial of this case. In addition, husband's mother testified that she would continue to meet her son's needs so long as it was for a proper purpose, which would include that his children and ex-wife be "properly cared for." *665 Husband's father claimed that he was not aware that his wife was supporting their son's family. It was not clear as to whether he could or would interfere in the future with the support that his wife had been supplying.
The wife argues, and we agree, that this case is factually distinguishable from Sol as well as the other cases in which Florida courts have held that gifts cannot be considered in arriving at income.
In Sol, as we already noted, the gifts were irregular in regard to both the amount and when they were made. In Bob, the wife's parents had been regularly helping the parties while the husband was in medical school, and the court held that the payments were "in all probability meant to be temporary," while the husband was being educated for a greater earning power. The court reversed an alimony award of thirty percent of the husband's income, holding that he was only obligated to support the wife in a standard of living which they could have maintained without the gifts from her parents.
In Bedell the wife sought an increase in alimony eleven years after the marriage was dissolved. Two years after the dissolution she had relinquished custody of the children to her husband, and she testified that her original alimony award had become inadequate at that time, as soon as she stopped receiving child support. The husband argued that he should not have to pay more because of the wife's mother's assistance. It is not surprising that the supreme court rejected the husband's argument because a spouse on the receiving end, who is being given assistance because of inadequate support, would be in a catch-22 if courts were to reduce support obligations for that reason. We thus find Bedell distinguishable.
In Shiveley the court concluded that income should not be imputed to the wife from gifts her parents had given the parties over six years, finding that what would happen in the future would be "purely speculative." Id. at 1022. There was no evidence in Shiveley of the regular periodic payments that there had been in the present case or testimony that the payments would continue in the future.
There are cases, however, in which gifts have been considered. The third district recently held that the trial court did not err in imputing income to the wife for purposes of child support, based on monthly payments of the wife's living expenses by the wife's mother. Cooper v. Kahn, 696 So.2d 1186 (Fla. 3d DCA 1997). The court noted that the definition of income in the definitions section of chapter 61 defines income as including "payments, made by any person." § 61.046, Fla. Stat. (1995). The court also noted that section 61.30(2)(a)13, Florida Statutes (1995), which provides child support guidelines, includes as income "reimbursed expenses or in-kind payments to the extent that they reduce living expenses." The court concluded that it was within the trial court's discretion to include the gifts, which were "continuing and ongoing," and distinguished the "sporadic gifts" in Sol. See also Thalgott v. Thalgott, 571 So.2d 1368 (Fla. 1st DCA 1990) (regular payments by a party's parents of expenses included in income); Garcia v. Garcia, 560 So.2d 403 (Fla. 3d DCA 1990) (the value of free housing provided by husband's father to wife and children included in wife's income).
Courts in other jurisdictions are divided on whether gifts can be considered. One case in which the court held that they could be considered was quoted in Judge Schwartz's dissent in Sol:
It is not necessary that a party be contractually entitled to certain income before such income can be considered in arriving at the fair amount of child support to be paid (see Tedrow v. Tedrow, 36 A.D.2d 686, 319 N.Y.S.2d 785). The evidence is clear that the defendant has been receiving monthly gifts from his aunt for some time and that it is her intention to continue making these gifts so long as she is able to do so. In these circumstances, the gifts were properly taken into consideration. In the event the payments cease at some later date, the defendant is free to seek a downward modification in this child support obligation in the appropriate manner.
Blickstein v. Blickstein, 99 A.D.2d 287, 294, 472 N.Y.S.2d 110, 115 (1984). See also Tutak v. Tutak, 127 Misc.2d 436, 486 N.Y.S.2d 637, 638 (N.Y.Fam.Ct.1985). But see Huebscher *666 v. Huebscher, 206 A.D.2d 295, 614 N.Y.S.2d 524 (N.Y.App.Div.1994) (annual gifts to wife from mother should not be included in imputed income to wife for purposes of establishing child support).
In Barnier v. Wells, 476 N.W.2d 795 (Minn.Ct.App.1991), the husband had been receiving monthly payments from his father as well as $5,000 from his grandmother on his birthday, Easter, and Christmas. The Minnesota court concluded that if a gift is regularly received from a dependable party, it may be used to determine the amount of child support. To the same effect is Schinner v. Schinner, 143 Wis.2d 81, 420 N.W.2d 381 (Wis.App.1988). In Nass v. Seaton, 904 P.2d 412 (Alaska 1995), the court did not allow the gifts to be included but noted that the applicable rule would, under some circumstances, permit it. Gifts were not included in Triggs v. Triggs, 920 P.2d 653 (Wyo. 1996); however, the court left the door open for them to be included under more compelling facts.
For cases holding that gifts cannot be included, see In re Marriage of Harmon, 210 Ill.App.3d 92, 154 Ill.Dec. 727, 568 N.E.2d 948 (1991); True v. True, 615 A.2d 252 (Me. 1992); Ikard v. Ikard, 819 S.W.2d 644 (Tex. App.1991); and Ebbert v. Ebbert, 744 P.2d 1019 (Utah App.1987).
Returning to Florida law, we agree with the third district's analysis in Cooper that the provisions of chapter 61 are broad enough to include regular gifts in determining income for purposes of child support. In regard to alimony, the statute provides that the court "shall consider all relevant economic factors, including but not limited to...." All sources of income available to either party. § 61.08(2)(g), Fla. Stat. (1995). The court can also "consider any other factor necessary to do equity and justice between the parties." Id.
Unlike the wife's mother in Bedell, who was helping her daughter because her alimony was inadequate, the husband's parents in this case began a pattern of support at the inception of the marriage that not only allowed the parties to get accustomed to a high standard of living, but also took away the husband's incentive to work. If there was ever a case in which gifts should be included in imputing income, this is it.
We have not overlooked the husband's father's testimony that he did not know of, and was not in agreement with, his wife's generosity. He did know, however, that his son's family was living in a home owned by the business and that the son was being paid a regular salary without having to show up for work. Nor could he have been unaware of their standard of living. The money had to have come from somewhere.
We conclude, under these specific facts, that the trial court had the discretion to include the regular support from the husband's parents when determining husband's income for purposes of paying child support and alimony. As the New York court observed in Blickstein, the husband can seek a downward modification if circumstances change. 472 N.Y.S.2d at 115.
Although we have concluded that the definition of income as well as other provisions of chapter 61 could include the payments made by the husband's parents in this case, we are certifying the issue as one of great public importance to the Florida Supreme Court. We do so for two reasons. First, the cases in which adult children are regularly receiving assistance from parents are probably going to become more frequent, because the opportunity to earn and save substantial sums is not the same for this generation, as it was for the last. Second, we have some concerns about a broad general statement made by our supreme court in Bedell. In that case, as we noted earlier, the wife was receiving assistance from her mother because her alimony was inadequate. In rejecting the husband's claim that the gifts should be included in assessing the wife's needs, the court said:
For the purpose of demonstrating need in dissolution or modification proceedings, the fact that one of the parties is surviving through the largess of her family is legally irrelevant.
583 So.2d at 1008. Although we find Bedell distinguishable on its facts, the supreme court should be given the opportunity to decide whether it intended by the above *667 statement to preclude all gifts from being considered as income.
We now turn to the remaining issues. Because the court found that the marital assets were of no use to the wife, the court awarded all of them to the husband, but ordered the husband to pay lump sum alimony of $134,600 in order to equalize things. The husband argues, and the wife concedes, that the court should only have awarded one-half that amount in order to equalize things. That should be corrected on remand.
In addition, husband argues that the court erred in finding that the certificates of deposit and annuity, which the trial court found to be husband's non-marital assets, were owned by husband. He argues they are owned by his father. The facts showed that husband's father had put the certificates of deposit and annuity solely in husband's name, but had kept possession of them. The father testified that he did not intend for husband to have present use of the accounts, but that they were to go to the husband when the father died. The father testified that he did not tell the husband about the accounts, and the husband testified that he had no knowledge of them until the wife discovered them in these proceedings.
The interest earned on the certificates of deposit was reported on the husband's income tax returns in the 1990's. The husband testified that he was not aware of this as his father's accountant prepared the returns and he merely signed them without reading them. The wife testified that the husband did know about these assets and had contemplated cashing them in for his own use.
We affirm the trial court's finding that these assets were owned by the husband. Although the record does not reflect the dates and amounts of each transfer, they have all of the earmarks of transfers so that the assets would not be subject to estate taxes at the father's death. It does not necessarily follow from the fact that the father may have retained possession of them that they were not completed gifts. Having transferred these assets into his son's name, the father could not have regained ownership unless his son signed them over to him. Also, the trial court could have disbelieved the testimony that the son did not know about these assets or have access to them, in light of the wife's testimony to the contrary.
We also affirm the finding that the wife in this twelve year marriage is entitled to permanent alimony. This case is very similar factually to Zeigler v. Zeigler, 635 So.2d 50 (Fla. 1st DCA 1994), in which the ages of the parties, length of marriage, and work history of the wife, who stayed home with the children by mutual agreement of the parties, were very similar. In that case the trial court did not award permanent alimony, and the first district reversed, holding that she was entitled to it. We find Judge Wolf's analysis of the propriety of permanent alimony in marriages of this duration, which are not necessarily either short term or long term, persuasive, and affirm the permanent aspect of the alimony award on that basis. The amount must be reconsidered in light of our conclusion that the court erred in not considering the financial support of husband's parents.
The wife argues that the trial court erred in not including interest the husband would receive from the certificates of deposits and the annuity in calculating child support. We cannot determine from the findings whether this was considered, but we assume that after redistribution of the certificates of deposits and the annuity on remand, the court will consider the income on those assets as income to both parties. We find no error in the court awarding the wife attorney's fees and costs.
We therefore reverse and remand for further proceedings and certify the following issue to the Florida Supreme Court as one of great public importance.
CAN A COURT CONSIDER REGULAR, PERIODIC GIFTS IN DETERMINING INCOME FOR PURPOSES OF ESTABLISHING ALIMONY AND CHILD SUPPORT?
WARNER and PARIENTE, JJ., concur.