Thomas Henry PENNER, Appellant

v.

Linda Lane Blevins PENNER, Appellee.

No. 2011–CA–002238–MR.

Court of Appeals of Kentucky.

Sept. 27, 2013.

Julie A. Johnson, Louisville, KY, for appellant.

Mary Jane Lintner, Louisville, KY, for appellee.

Before LAMBERT, MOORE, and VANMETER, Judges.

## OPINION

LAMBERT, Judge:

Thomas Penner (Tom) appeals from the Jefferson Circuit Court, Family Division's September 12, 2011, and December 6, 2011, orders regarding calculation of maintenance and child support, the division of the parties' assets, and the award of attorney's fees to Linda Lane Blevins Penner (Lane). After careful review of the record, the hearings, and the parties' arguments, we affirm in part, reverse in part, vacate in part, and remand.

Tom and Lane met in September 1994 while working for a law firm in Atlanta, Georgia. Tom was a law clerk and Lane was a paralegal. The parties were married on November 25, 1995. Tom started law school at Emory University in 1996. Also in 1996, Lane began having symptoms of multiple sclerosis, and she has since been diagnosed with recurring and remitting multiple sclerosis, which results in sporadic fatigue, mild cognitive issues, and numbness in her arms and legs. Lane took off a couple months to rest, but then she resumed her employment.

In 1997, the couple started trying to have a family, and Lane had to undergo fertility treatments. She quit her job so she could focus more on that effort. When Lane was unable to get pregnant, the parties decided to adopt. They adopted Mary Lane in 2000 and Eloise in 2001. Mary Lane and Eloise were adopted at the time of their respective births and are biological sisters. Lane never resumed employment after the adoption of the girls until the parties separated much later.

Tom graduated from law school in 1999, and the parties moved to Louisville when Tom accepted a one-year clerkship with the Sixth Circuit Court of Appeals. At the end of the clerkship, the parties returned to Atlanta, where Tom accepted employment at Alston & Bird. In 2003, Tom and Lane moved back to Louisville so Tom could accept a position with Frost Brown Todd. In 2004, Tom left that position to accept his current position as an attorney at Humana, Inc.

The oldest adopted child, Mary Lane, has been diagnosed as being ADHD with secondary visual memory impairment. The younger child, Eloise, has been diagnosed with Dyssemia and Asberger's Syndrome. Both children attend Summit Academy, a private school for children with special educational needs, at a cost of approximately $30,000.00 per year.

Tom and Lane both received financial assistance from their families during the marriage. Tom testified that while in law school, his grandmother provided him with the annual IRS exclusion amount and purchased his books and clothing. Lane received an inheritance of $338,151.00 from her grandfather during the marriage. Additionally, Lane's father, Harold Blevins, M.D., gave Lane at least $1,000.00 to $2,000.00 per month prior to the parties' separation. Dr. Blevins also paid for the parties' daughters to attend Summit Academy during the parties' marriage. Dr. Blevins testified that he volunteered to pay for the girls to attend Summit Academy because it appeared Lane and Tom could not afford it.

Lane and Tom separated on October 1, 2007, and Tom filed a petition for dissolution of marriage on October 30, 2007. Around that time, Tom vacated the marital residence. By order dated June 30, 2008, the trial court set child support at $1,639.00 per month. By order dated August 15, 2008, the trial court awarded maintenance to Lane in the amount of $3,600.00 per month. The trial court required Lane to pay the first and second mortgage on the marital residence, the minivan payment, and the utilities and

food associated with the marital residence. Lane did not make the payments as required, which resulted in a foreclosure action being filed and Tom having to cash in stocks to cure the $14,198.46 default.

As a result of Lane's failure to make the mortgage payments, the trial court ordered Tom's maintenance payments to be reduced to zero retroactive to December 1, 2009, and required him to make the first and second mortgage payments. Lane subsequently vacated the marital residence, and Tom moved back into it. On April 1, 2010, Lane made another motion for *pendente lite* maintenance, requesting $1,000.00 per month. Tom filed a response in objection to Lane's motion on April 22, 2010. Without having a hearing, the court ordered Tom to pay Lane $500.00 per month in maintenance on May 1, 2010.

The original August 15, 2008, order also required Tom to pay the children's private school tuition at Summit Academy in addition to maintenance. Tom filed a motion on August 21, 2008, to vacate the part of the ruling requiring him to pay the tuition, and this motion was passed to trial. Tom's position throughout this action was that the children should go to Jefferson County Public Schools (JCPS) because he felt they should be mainstreamed into a public school setting. At trial, Tom presented the testimony of Susan Van Fleet McGurk, Psy.S., who is employed by the JCPS as a school psychologist, regarding the sufficiency of JCPS for the parties' daughters. Following her testimony, Lane's counsel stated that Lane would voluntarily secure the funds to pay 100% of the children's tuition at Summit Academy if the trial court would find that it is in their best interest to continue their education there.

Regarding Tom's income, Tom is currently employed as an attorney for Humana. During the marriage, his compensation included his salary, an incentive bonus (MIP), and restricted stock grants. The stock grants that Tom received were on a three-year vesting schedule, which means that the shares granted would vest through 2012. As there was no stock granted in 2010, there would not be any stock vesting in 2013. When the stock vests, Humana simultaneously sells enough shares to pay taxes on the entire grant, and Tom receives the remaining balance of the shares. At the October 2, 2009, trial, Tom presented the testimony of CPA Gwen Tilton for purposes of explaining this process. By way of example, Ms. Tilton explained that the Humana stock that vested in 2008 was worth a total of $89,918.79 on the date of vesting, with this amount being reflected on Tom's W–2. On the day of vesting, Humana simultaneously sold shares valued at $36,449.72 in order to pay the taxes. Therefore, Tom only actually received stock worth $53,469.07. At the time of vesting, the price per share was $69.34. The remaining shares, which Tom did not sell prior to the trial, had significantly dropped in value to less than $40.00 per share.

On April 22, 2010, Tom filed a motion alleging that Lane dissipated marital funds by refusing to file the 2009 taxes with him under the designation of "married filing jointly." This motion was passed to the final day of trial on July 29, 2010. On that day Tom presented to the trial court a notice of compliance and an affidavit from a CPA stating that if Lane would have filed her taxes jointly with Tom, the parties would have had a refund in the amount of $8,804.00, as opposed to a tax liability for Tom of $13,621.00.

The court entered a limited decree of dissolution of marriage on March 16, 2010. The court heard trial testimony on October 7, 2009, December 2, 2009, and July 29, 2010. The trial court held the record open

after the last hearing to allow the parties to take additional trial depositions. The case was submitted for adjudication on December 20, 2010. The trial court entered its findings of fact and conclusions of law on September 12, 2011.

In that order, the trial court awarded joint custody of the children to the parties and established a week on/week off equal timesharing arrangement for the parties with the children. The trial court ordered that the children would continue to attend Summit Academy at Lane's expense and awarded the marital residence to Tom (which had no equity and which Tom later sold at a loss). The trial court ordered each party to retain their vehicles and awarded an equal division of Tom's retirement and all vested and unvested Humana stock. The trial court instructed the parties to keep the furniture they currently possessed and ordered each party to be responsible for their own debts incurred after the separation and awarded Lane maintenance of $2,000.00 per month for 48 months. Child support was awarded to Lane in the amount of $1412.00 per month, with Tom providing the children's health insurance and a 22.78% (Lane) and 77.22% (Tom) split of the children's work-related childcare and extraordinary medical expenses in excess of $100.00 annually. The trial court ordered each party to pay their own attorney's fees.

The parties both filed Kentucky Rules of Civil Procedure (CR) 52.04 and CR 59 motions on September 20, 2001. The trial court held a hearing in October and issued an order denying Tom's motion on December 6, 2011. The trial court issued a separate order on that same date granting Lane's motion in part by awarding her $31,249.00 in attorney's fees.

Tom now appeals from the court's September 12, 2011, findings of fact and conclusions of law and both of the December 6, 2011, orders with respect to the following: 1) the trial court's calculation of Tom's income for child support and maintenance purposes; 2) the trial court's refusal to include the total value of the gifts received by Lane from her parents as income to her; 3) the trial court's refusal to include Lane's actual earned income or to impute earned income to Lane for child support and maintenance purposes; 4) the trial court's refusal to deviate from Kentucky's child support guidelines and adjust his child support obligation as a result of its award of an equal timesharing arrangement with the children; 5) the trial court's refusal to give Tom a credit for the private school tuition payments he made during the pendency of the action; 6) the trial court's refusal to give Tom a credit for funds he utilized to cure the mortgage default on the marital residence; 7) the trial court's refusal to give Tom a credit for funds dissipated by Lane as a result of her refusal to file the parties' 2009 income taxes under the designation of "married filing jointly;" and 8) the trial court's award of attorney's fees to Lane.

"A trial court's decision regarding maintenance will not be reversed absent an abuse of discretion." *Gomez v. Gomez,* 168 S.W.3d 51, 57 (Ky.App.2005) (internal citation omitted). An award of maintenance lies within the discretion of the trial court and a reviewing court will uphold the award if the trial court did not abuse that discretion or base its decision on findings of fact that are clearly erroneous. *Brooks v. Brooks,* 350 S.W.3d 823, 827 (Ky.App.2011).

Similarly, this Court's review of child support awards is governed by the abuse of discretion standard. *Holland v. Holland,* 290 S.W.3d 671, 674 (Ky.App. 2009). "The test for an abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsup-

ported by sound reasonable principles." *Sexton v. Sexton,* 125 S.W.3d 258, 272 (Ky. 2004) (footnote omitted).

▓ With these standards in mind, we turn to Tom's first argument on appeal. Tom's argues that the trial court abused its discretion by treating his Humana restricted stock shares as both marital property subject to division and as his income for purposes of determining child support and maintenance. In its findings of fact, the trial court ordered that all of the non-vested Humana stock shares granted prior to the March 16, 2010, decree of dissolution were to be equally divided by the parties at the time of vesting. However, the trial court also included the total value of the stock which vested in 2010 as part of Tom's gross income for the purposes of determining maintenance and child support, holding that Tom's gross income was $186,748.31. Tom contends that this resulted in Tom being ordered to pay child support and maintenance based on a substantial amount of income over which he does not have exclusive use and possession, resulting in Lane having a double dip at the stock.

Kentucky Revised Statutes (KRS) 403.212(2)(b) broadly defines gross income, and Tom's gross income should include any post-decree stock grants received by him upon vesting because he would then have exclusive control over those funds. However, Tom argues that it is not the legislature's intent for the courts to order a parent to pay child support based upon receipt of one-half of a marital asset. Tom contends that if the trial court were going to include the value of the stock options at the time of vesting as income, then it should have included only 50% as Tom's income and 50% as Lane's income. Instead, the trial court gave 100% of the income to Tom while permitting him to only have access to 50% of it.

There does not appear to be any reported Kentucky decisions dealing specifically with this issue. In *Clary v. Clary,* 54 S.W.3d 568, 572 (Ky.App.2001), this Court considered other forms of compensation and/or income, such as capital gains, and included them for child support purposes, but in that case the recipient of the income was not otherwise ordered to split the proceeds with the other parent. This Court stated, "We believe the receipt of a substantial amount of money *that is available to the recipient* for a continuing period of time constitutes a material change in circumstances." *Id.* at 573. (Emphasis added).

As there are no reported decisions on point, Tom urges this court to consider an unpublished decision pursuant to CR 76.28(4)(c). Tom argues that the unpublished case, *Burton v. Burton,* 2011 WL 557469, No. 2009–CA–001431–MR, rendered on February 18, 2011, could be of assistance to this Court, as it discusses treatment of restricted stock for child support purposes. In *Burton,* the husband received restricted stock units (RSU's) as part of his compensation. *Id.* at *3. The trial court treated the RSU's still being held by the husband as marital property and divided them equally between him and his wife. *Id.* In calculating child support, the trial court did not include the divided shares in the husband's income, instead only included the proceeds from shares he exercised as income. *Id.* In upholding the trial court's analysis, this Court stated, "Thus, there was no 'double dipping' as alleged by Christopher. Rather the circuit court properly classified the proceeds from the sale of RSU as income and RSU retained by Christopher as a marital asset." *Id.*

Tom argues that in the instant case, the trial court should have 1) equally divided the marital stock upon vesting and not

included the stock as income to either party but counted it merely as an asset received by each party, such as other marital assets (i.e. vehicles or 401(k) division); 2) treated the stock as income to Tom upon vesting *instead* of marital property, and permitted Tom the full use of the funds; or 3) divided the marital stock upon vesting and counted 50% as income to Tom and 50% as income to Lane.

Lane argues that Tom's argument is based on a mischaracterization of the evidence. Lane contends that when the trial court computed Tom's income for purposes of calculating his future child support obligation, it used the income he earned in 2010, which included the stock that had been granted in 2007 and vested in 2010. Tom argues that this was an abuse of discretion because that stock was ordered to be divided and Lane was to receive half of it. Lane contends that it is true that the trial court divided the restricted stock awards earned by Tom during the marriage, but all but one of those awards had vested and been divided between the parties before the maintenance and child support awards made in the court's final decision went into effect.

While we agree that the stock vesting schedule is somewhat confusing and muddies the waters a bit, we ultimately agree with Tom that the trial court improperly included his stock shares as an asset to be divided between the parties and as income to Tom. We agree that the trial court abused its discretion in this regard. Therefore, we vacate this portion of the trial court's order and remand for instructions that the trial court equally divide the stock upon vesting and not include the stock as income to either party, treat the stock as income to Tom upon vesting instead of marital property, or divide the stock upon vesting and attribute half as income to Lane and half as income to Tom.

Tom next argues that the trial court abused its discretion with respect to determining child support and maintenance by refusing to include additional gift income to Lane. In particular, Tom points out that while both parties testified that they received financial assistance from relatives during the marriage, Lane was continuing to receive such assistance after the separation and divorce. In fact, Lane testified at trial that her parents were continuing to give her financial assistance of approximately $2,000.00 a month in cash, although she and her father both testified that the money constituted a loan. The trial court found this testimony not to be credible; Lane had never made a single payment on any such loan. Further, during the pendency of this action, Dr. Blevins purchased a residence for Lane, and she signed a lease stating that she would pay her father $1,200.00 a month in rent for the residence. However, at the time of trial, Lane had not made a single rental payment to her father. Also during the pendency of this action, Dr. Blevins purchased a 2007 Honda Odyssey for Lane, and he testified that he expected Lane to pay him $500.00 a month for four years for the minivan. However, he admitted that Lane had not made a payment on the van.

Tom contends on appeal that while the court correctly surmised that the benefit Lane received from living in her father's residence and driving the minivan did not constitute loans, it should have gone further pursuant to KRS 403.212(2)(b) and attributed an additional $1,700.00 in monthly income to Lane for purposes of child support and maintenance, representing $1,200.00 for the residence and $500.00 for the minivan.

KRS 403.212(2)(b) specifically includes gifts as gross income for the purposes of calculating child support. Gifts can take the form of cash or of payments made on a

parent's behalf. *See Stewart v. Burton,* 108 S.W.3d 647 (Ky.App.2003). There, this Court found that expenses paid by the father's parents (one-half of his rent and his car lease payment) were appropriately included by the trial court in the father's income. *Id.* at 648. This Court cited with approval the Maryland case of *Petrini v. Petrini,* 336 Md. 453, 648 A.2d 1016, 1019 (1994), in which the father's rent-free housing and payment of expenses from his mother were credited to him as gift income. *Id.* This Court reasoned that the purpose of including these paid-for expenses in income was because of their "effect of freeing up other income that may or may not have otherwise been available to pay a child support award." *Id.*

Tom concedes that in the instant case, Lane is the recipient of child support, rather than the payor, and thus *Stewart, supra* is not directly analogous. However, he urges this Court to consider the fact that child support is based upon both parents' incomes, and attribute Lane with her actual income, which is the $3,700.00 per month received from her father.

To the contrary, Lane points to the fact that other jurisdictions that have considered this issue have made a material distinction between including a relative's provision of help for an under-supported spouse/parent and paying for expenses for the obligor spouse/parent. She cites to *Bedell v. Bedell,* 583 So.2d 1005, 1008 (Fla. 1991), in which the Florida Supreme Court rejected the husband's contention that the wife does not really need more alimony because her mother is assisting in her support. "For the purpose of demonstrating need in dissolution or modification proceedings, the fact that one of the parties is surviving through the largess of her family is legally irrelevant." *Id.* Similarly, in *Ordini v. Ordini,* 701 So.2d 663, 665 (Fla. 4th DCA 1997), the Florida District Court of Appeals rejected the husband's argument that he should not have to pay more because of the wife's mother's assistance.

We are cognizant that in a case such as this, where a spouse has not worked for a long period of time, that maintenance may be appropriate and justified. However, when it is clear that the parties have lived well above their means for an extended period of time due to one or both of their parents' help, it seems unfair to force one spouse to continue to pay for a lifestyle that simply cannot be sustained. Thus, we agree with Tom that Lane's parents actually provide her with gift income in the amount of $3,700.00 per month. This is in line with prior Kentucky law and prior opinions of this Court. It was an abuse of discretion for the trial court not to impute this income to Lane for purposes of child support and maintenance. Thus, we vacate the portions of the trial court's orders regarding maintenance and child support and remand with instructions that the trial court attribute Lane's full gift income to her for purposes of calculating both.

■ Tom's next argument also deals with maintenance and child support. He argues that Lane is underemployed and that the trial court abused its discretion by not attributing Lane's actual or potential income to her, citing her bachelor's and paralegal degrees, her temporary experience transcribing medical notes for her father, and testimony of a vocational expert that "Lane could expect to earn $40,000.00 annually if she obtained a masters degree in teaching."

Lane again cites to out of state authority, arguing that the standard of review for a trial court's imputation of income is whether there is competent, substantial evidence to support it. *See Schmachtenberg v. Schmachtenberg,* 34 So.3d 28, 36 (Fla. 3d DCA 2010). There, the Florida Court held that it was improper for the trial court to

impute employment income to the wife. The record in that case was that while the wife had both a bachelor's degree and a real estate license, she had not held meaningful employment since the 1970s. *Id.* at 37. The court found that there was no evidence as to whether the wife was employable as a real estate agent or evidence of the current job market regarding the prevailing earnings level for such agents in the community where the wife lived. Absent such evidence, the court did not impute any income to her. *Id.*

Lane argues that this case is very similar to *Schmachtenberg,* because at the time of trial, Lane was forty years old and had not been employed outside the home since 1997. She contends that her lack of any recent work experience, combined with her remittent multiple sclerosis, renders little to no evidence about any income she could expect to receive in the current job market. Based on her father's testimony about helping her out financially so she would not exacerbate the symptoms of her disease, the trial court held that it would not both impute her gift income and any potential income to her.

We note that Tom presented evidence to the trial court as to Lane's income earning potential, utilizing her recent experience doing medical transcriptions for her father, her bachelor's degree in English, as well as her paralegal degree and a potential master's degree she could obtain. While we think that the trial court could have determined a reasonable earning potential for Lane, we do not find that the trial court's refusal to attribute this uncertain income to Lane on top of her gift income from her father for purposes of child support and maintenance amounts to an abuse of discretion. Thus, we affirm the trial court's order in this regard.

■ Tom next argues that the trial court abused its discretion by failing to deviate from the child support guidelines once it established an equal time-sharing schedule for the children. Tom cites to *McGregor v. McGregor,* 334 S.W.3d 113 (Ky.App.2011), wherein this Court upheld the trial court's deviation from the child support guidelines based upon an equal time sharing arrangement. Tom argues that cases such as *Plattner v. Plattner,* 228 S.W.3d 577 (Ky.App.2007), and *Dudgeon v. Dudgeon,* 318 S.W.3d 106 (Ky.App.2010), require the trial court to deviate down from the guidelines where an equal time sharing schedule is established.

■ We agree with Lane that those cases do not require the trial court to deviate down from the child support guidelines. In setting child support:

> Kentucky trial courts have been given broad discretion in considering a parent's assets and setting correspondingly appropriate child support. A reviewing court should defer to the lower court's discretion in child support matters whenever possible. As long as the trial court's discretion comports with the guidelines, or any deviation is adequately justified in writing, this Court will not disturb the trial court's ruling in this regard.

*Downing v. Downing,* 45 S.W.3d 449, 454 (Ky.App.2001) (Footnotes omitted). Contrary to Tom's assertion that the trial court must deviate from the child support guidelines in a shared parenting arrangement, Kentucky law holds that a trial court *may* deviate from the child support guidelines if the parents share equal parenting time. In the instant case, based on the financial circumstances of the parties, the educational and emotional health needs of the children involved, Lane's health concerns, and Tom's income, we cannot say that the trial court abused its discretion in failing to depart completely from the child

support guidelines in setting Tom's child support obligation. The fact of the matter is that Tom earns significantly more money than Lane and has for an extended period of time. Lane has been the children's primary caretaker and simply does not earn the money necessary to support the children in a lifestyle similar to that which they experienced when the marriage was intact. Absent an abuse of discretion, we affirm the trial court's order setting child support under the guidelines despite the equal parenting time shared by the parties.

■ Tom next argues that the trial court erred by refusing to award him a credit with respect to private school tuition he paid during the pendency of the divorce action. Tom argues that he made tuition payments totaling at least $32,778.10 during the time period that the divorce was pending, and he requested the trial court to reimburse him with at least one-half of those funds. Tom notes that the trial court's findings of fact and conclusions of law were silent as to his request to be reimbursed for one-half of the expenses. The trial court refused to modify its order when Tom filed his CR 52.04 and CR 59 motions. Tom's argument is essentially that because the trial court ultimately determined that the children could be mainstreamed and he was not required to pay for private school anymore, he was therefore entitled to reimbursement for the fees he had already incurred. Tom concedes that there is no Kentucky precedent requiring the trial court to credit him for these expenses.

■ In response, Lane argues that the order requiring him to continue to pay the children's educational expenses amounts to a temporary order. Temporary support orders are within the sound discretion of the court and will not be disturbed on appeal absent a clear abuse of discretion.

*Brandenburg v. Brandenburg,* 246 Ky. 546, 55 S.W.2d 351 (1932). Lane argues that the trial court was entitled to accept the parties' voluntary choice to enroll their children in a private school dedicated to helping children with learning disabilities and to maintain that status quo until the hearing on the matter, where testimony could be presented to establish whether the children needed to continue their education at Summit or could be mainstreamed into JCPS.

We agree with Lane that the trial court properly required Tom and Lane to pay the expenses of the private school tuition while the divorce action was pending. After Lane agreed to incur the cost of the private school tuition, Tom was not required to pay any more of the expenses. It was not an abuse of discretion for the trial court to not award Tom a credit for half of the fees incurred during that time.

■ Tom argues that the trial court abused its discretion by refusing to award Tom a credit for funds he had to pay to cure the mortgage default. Tom points out that although Lane was receiving $2,000.00 per month from her father, $3,600.00 per month in maintenance, and $1,639.00 per month in child support from Tom, she failed to pay the first and second mortgage on the marital residence as the trial court ordered her to do in its August 15, 2008, order. As a result, the marital residence fell into foreclosure, and Tom had to cash in marital stock and pay $14,198.46 to cure the defaults.

Lane responds that although the trial court ordered her to make the mortgage payments and car payments in its August 2008 order, at that time maintenance was set at $3,600.00, and the payments on the mortgage alone exceeded this amount. Lane fails to account, however, as to how her additional income of $2,000.00 from her father and the child support in the amount

of $1,639.00, per month did not enable her to make such payments. Instead, she argues that she simply could not make the payments and thus should not be held accountable for what she was ordered to do in August 2008.

Subsequent to Lane's failure to make the payments, she obtained another residence and moved out of the marital home. Tom was then ordered to pay the mortgage and maintenance was lowered to $500.00 per month to allow Tom to make the mortgage payments until the property could be sold. Lane seems to argue that because her maintenance was not enough to pay the mortgage, she should be absolved of any amount expended to cure the default and avoid foreclosure. We agree with Tom that the trial court abused its discretion in this regard. Tom should not be forced to pay Lane $3,600.00 per month in maintenance, $1,639.00 in child support, and pay the mortgage and default fees on top of that. Lane chose not to pay the mortgage on the residence, despite ample money provided by Tom in the form of child support and maintenance to do so. Therefore, we reverse the portion of the trial court's order denying Tom's claim for repayment of one-half of the payments he made to cure the defaults.

■ Next, Tom argues that the trial court abused its discretion by refusing to award him a credit for the 2009 taxes he was forced to pay as a result of Lane's refusal to file a joint tax return. Before the trial court and before this Court on appeal, Tom presents this argument as a dissipation of marital assets claim. The trial court denied Tom's claim, stating that it "[did] not sound in a claim for dissipation and absent a court order to the contrary, [Lane] [was] under no legal obligation to file a joint income tax return with [Tom]."

In his brief to this Court, Tom argues that Lane's failure to sign a joint return with him constituted dissipation and argues that "[t]he court may find dissipation when marital property is expended (1) during a period when there is a separation or dissolution impending; and (2) where there is a clear showing of intent to deprive one's spouse of her proportionate share of the marital property." *Robinette v. Robinette*, 736 S.W.2d 351, 354 (Ky.App. 1987). However, in the instant case the trial court did not find a clear showing of intent by Lane to deprive Tom of his proportionate share of the marital property. There was no testimony at trial about the tax return and no proof that Lane refused to sign such a return. Thus, the trial court did not abuse its discretion in denying Tom's claim for dissipation of marital assets.

■ Finally, Tom argues that the trial court abused its discretion when it ordered him to pay $31,249.00 of Lane's attorney's fees. Initially in its findings of fact and conclusions of law, the trial court denied Lane's claim for $104,503.01 in attorney's fees, all of which had been paid by her father. The trial court reasoned that the underlying purpose of KRS 403.220 is to prevent a party with superior financial resources to have legal representation while a party with inferior financial resources is unable to afford comparable legal representation in matters of divorce. The trial court determined that Lane was not without substantial financial resources as the evidence indicated that Lane's parents had helped her not only after the separation, but during the duration of the parties' marriage.

However, in its December 2011, order, the trial court reversed its prior ruling and awarded Lane $31,249.00 in attorney's fees. The trial court reasoned that "during the marriage the parties consumed

most of their assets. Under the facts and circumstances of this case [Tom] has his law degree, a career, and the ability to earn that was developed during the marriage. On the other hand, [Lane] may have access to financial resources from her family, so long as her family voluntarily provides her with those resources, but they are not hers and she has no legal right to those resources." The trial court noted that her present ability to earn is also much less than Tom's.

We agree with Lane that the trial court did not abuse its discretion in awarding a portion of the massive legal fees incurred by Lane to be paid by Tom. The trial court correctly evaluated the parties' respective financial positions and only awarded Lane a third of the attorney's fees Lane actually incurred. Given the parties' respective financial positions and the fact that Lane is receiving maintenance and will have to seek out employment, we cannot say that the award of a portion of the attorney's fees amounts to an abuse of discretion.

Based on the foregoing, we affirm in part, reverse in part, vacate in part, and remand this case to the trial court for further proceedings consistent with this opinion.

ALL CONCUR.